EVERETT FACTORIES & TERMINAL CORPORATION *vs.* OLDETYME DISTILLERS CORPORATION.

Middlesex. November 12, 1936. — June 22, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, DOLAN, & COX, JJ.

*Equitable Servitude. Deed,* Construction, Acceptance, Deed poll. *Contract,* What constitutes, Implied, Covenant, Parties.

By acceptance by the grantee of a deed poll conveying land and an appurtenant right to use a spur track on adjoining land of the grantor, to be exercised in connection with tracks belonging to the grantee on the land conveyed and extending to other land of the grantee, and providing that the grantor, its successors and assigns should have a right to use the track on the granted land and, further, that the conveyance was upon the "express condition that the grantee and its successors and assigns shall pay the grantor and its successors and assigns annually" a certain portion of the expense of maintaining

the grantor's track and interest and taxes relating thereto, an equitable servitude to make such annual payments was imposed upon the granted land and easement for the benefit of the grantor's adjoining land, subsequently enforceable in equity against the granted land and easement in the hands of a successor of the grantee who took title with constructive notice of the servitude through the recording of the original deed; but the provision for the payments could not be enforced against the subsequent owner personally as a covenant running with the land or otherwise.

The promise, implied by the acceptance by a grantee of a deed providing that he make certain payments to a predecessor of the grantor, was not enforceable by the predecessor of the grantor.

BILL IN EQUITY, filed in the Superior Court on November 15, 1935, and afterwards amended.

From a final decree entered by order of *Williams*, J., the plaintiff appealed.

The case was argued at the bar in November, 1936, before *Rugg*, C.J., *Pierce*, *Field*, *Donahue*, & *Qua*, JJ. After the death of *Rugg*, C.J., and the retirement of *Pierce*, J., the case was submitted on briefs to *Lummus*, *Dolan*, & *Cox*, JJ.

*L. W. Black*, for the plaintiff.

*W. E. Foley*, for the defendant.

FIELD, J. The plaintiff by a quitclaim deed in statutory form (G. L. [Ter. Ed.] c. 183, § 11), dated January 21, 1924, and duly recorded, "for consideration paid," granted to the Everett Distilling Company two contiguous parcels of land in Everett, shown on a plan recorded with the deed, which together constitute a narrow strip of land running in a general southwesterly direction from Garden Street for a distance of between five and six hundred feet and "Also the right to use the railroad tracks belonging to the grantor extending Southwesterly from the parcels herein conveyed and which in fact, connect with the Boston & Maine Railroad, a part of which being shown on said plan; said right to be exercised in connection with the operation of tracks belonging to the grantee and situated in part upon the parcels herein conveyed and extending therefrom Easterly across Garden and Vine Street to other premises owned by the grantee." The deed contains, in the form of express conditions, limita-

tions upon the use by "the grantee and its successors and assigns," of "the tracks belonging to the grantee," and a provision that "the grantor, its successors and assigns, reserve and shall have the right" to use for certain described purposes "so much of the grantee's tracks as are located on the granted premises." By mesne conveyances the premises and rights conveyed to the Everett Distilling Company were conveyed to the defendant, which took a conveyance thereof in 1932.

The deed from the plaintiff to the Everett Distilling Company contained this provision: "This conveyance is made upon the further express condition that the grantee and its successors and assigns shall pay the grantor and its successors and assigns annually one third of the expense of maintaining the main spur track of the grantor and also one third of the taxes assessed by the City of Everett upon the same, together with one third of 6% interest on the sum of $35,000." Later deeds in the defendant's chain of title contained the same provision, except that the words "Everett Factories & Terminal Corporation" were substituted therein for the word "grantor."

The plaintiff has continued to maintain its "main spur track" and payments have been made to the plaintiff of the amounts fixed by the deeds from the year 1925 to and including the year 1933 — the payment for the year 1933 having been made by the defendant. The amount for the year 1934, fixed in accordance with the deeds, is $963.23. The plaintiff has demanded this amount of the defendant, and the defendant has refused to pay, contending that it is not liable therefor under the deeds. There is nothing in the record to indicate that any action has been taken by the plaintiff to terminate the defendant's estate or interest under the deeds for breach of condition.

This is a suit in equity brought in the Superior Court by the plaintiff for a determination of right interpreting the deeds herein referred to — particularly the clauses thereof providing for an annual payment to the plaintiff — and for a decree "that the defendant is obligated to pay to the plaintiff" annually the sum of money referred to in the

deeds, that the defendant pay the plaintiff the sum of $963.23 with interest — the annual payment so provided for the year 1934 with interest — and for general relief. G. L. (Ter. Ed.) c. 213, § 3, Tenth A. Rule 101 of the Superior Court (1932). A decree was entered interpreting the words of these clauses by declaring that they "create an estate on condition and do not constitute a covenant running with the land," that "the defendant is not obligated by reason of said words" to make the annual payment to the plaintiff described thereby, and that the plaintiff is not entitled to recover from the defendant the sum of $963.23. From this decree the plaintiff appealed.

No question was raised by either party relating to pleading, to procedure under G. L. (Ter. Ed.) c. 213, § 3, Tenth A, and Rule 101 of the Superior Court (1932), or to the right of the court to determine the issues raised. See *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 471; *Radio Corp. of America* v. *Raytheon Manuf. Co.*, *ante*, 113, 114, and cases cited.

The deed from the plaintiff to the Everett Distilling Company, being in the statutory form of a quitclaim deed, was in proper form to convey to the grantee a fee simple estate in the granted premises, and a right of like quality to use tracks belonging to the grantor in connection with the grantee's premises, in the nature of an easement appurtenant to such premises. See G. L. (Ter. Ed.) c. 183, § 11. Such an estate, however, may be made defeasible if so provided in the deed conveying it. *Shattuck* v. *Hastings*, 99 Mass. 23, 24. And the words "upon the . . . express condition," even without express provision for entry for condition broken, are apt for this purpose. *Clapp* v. *Wilder*, 176 Mass. 332, 335. See also *Gray* v. *Blanchard*, 8 Pick. 284, 289. This natural interpretation of the words must be given them, unless the deed as a whole, as applied to the subject matter thereof, by showing a different intention of the parties, warrants a different interpretation. *Langley* v. *Chapin*, 134 Mass. 82, 86. *Bessey* v. *Ollman*, 242 Mass. 89, 91. Compare *Sohier* v. *Trinity Church*, 109

Mass. 1, 19; *Episcopal City Mission* v. *Appleton,* 117 Mass. 326; *Wilson* v. *Middlesex Co.* 244 Mass. 224, 230.

Whether or not the language of the original deed is to be interpreted as creating a condition subsequent for breach of which, by nonpayment of the amounts referred to therein, the plaintiff could terminate the estate for condition broken — as we do not decide — we think, in any event, that such language must be interpreted as imposing an obligation on the grantee to pay such amounts. Language which creates a condition may also create an obligation. Such words as are here used "are to be construed according to the subject matter, and if they are such as ordinarily imply stipulation or undertaking, they create an implied promise, although they are also words of condition." *Pike* v. *Brown,* 7 Cush. 133, 135. See also *Wilson* v. *Massachusetts Institute of Technology,* 188 Mass. 565, 581. It is apparent from the original deed, and the plan referred to therein, that the purpose of the conveyance was to enable the grantee, its successors and assigns, to have trackage connection for its premises east of Garden Street with the tracks of the Boston and Maine Railroad over tracks of the grantee on the granted premises and tracks of the grantor southwesterly thereof. In the light of the apparent purpose of the conveyance and of the language of the deeds as a whole, the provision that this "conveyance is made upon the further express condition that the grantee and its successors and assigns" make certain annual payments, whether or not construed as creating a common law condition, imports a stipulation that such payments should be made. From the acceptance of the deed by the original grantee the law will imply a promise by such grantee, in consideration of such conveyance, to make the stipulated payments — though, since the deed was not executed by it, such promise was not technically a covenant — for breach of which an action at law could be maintained against the original grantee, at least while it continued to be the owner of the granted premises. *Maine* v. *Cumston,* 98 Mass. 317, 319–320. *Whittenton Manuf.*

*Co.* v. *Staples,* 164 Mass. 319, 328. *Plimpton* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 548, 550. *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 182. See also *Whitney* v. *Union Railway,* 11 Gray, 359, 363. Whether this promise is conditional upon the continued maintenance of the "main spur track" of the grantor, except as the amount of the payments depends upon the expenses of such maintenance, need not be decided, for it appears that such track has been maintained.

Since, however, the promise of the grantee to make the stipulated payments was not technically a covenant, the doctrine of covenants running with the land has no application, and the defendant as successor in title to the grantee is under no liability on that ground. *Pearson* v. *Bailey,* 177 Mass. 318. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91, 93. But such a promise of the grantee may impose upon the granted premises a servitude enforceable in equity against the premises in the hands of a subsequent owner, taking title thereto with actual or constructive notice of the obligation of the original grantee. *Whitney* v. *Union Railway,* 11 Gray, 359. *Kennedy* v. *Owen,* 136 Mass. 199, 203. *Whittenton Manuf. Co.* v. *Staples,* 164 Mass. 319, 328. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91, 94. See *Bailey* v. *Agawam National Bank,* 190 Mass. 20, 23–24. This is true even where the equitable servitude calls for the performance of a positive act, and the positive act is the payment of money. *Whittenton Manuf. Co.* v. *Staples,* 164 Mass. 319, 327–328. Yet it has been said that "it never is to be forgotten that under all circumstances it is an anomaly requiring explanation when an active duty is other than personal and is attached to land." *Lincoln* v. *Burrage,* 177 Mass. 378, 380. *Orenberg* v. *Johnston,* 269 Mass. 312, 315.

It is clear, however, that the parties to the original deed intended that the obligation to make annual payments should be a burden on the granted premises for the benefit of the premises of the grantor and not solely personal to either party. See *Peters* v. *Stone,* 193 Mass. 179, 186; *Bennett* v. *Sheinwald,* 252 Mass. 23, 28. The deed provided,

in terms, that the payments should be made by "the grantee and its successors and assigns" to "the grantor and its successors and assigns." And the nature of the obligation is consistent with such an intention. The contract implied from the acceptance of the deed by the grantee purported to be made with the grantor as owner of adjoining land and for the benefit of such land. Compare *Pearson* v. *Bailey*, 177 Mass. 318, 319. The deed in providing for a trackage connection between the premises of the grantee and the Boston and Maine Railroad over the granted premises and the premises remaining in the grantor — which by such deed was made subject to an easement for that purpose in the grantee — contemplated reciprocal benefits and burdens between the premises of the grantee and those of the grantor. See *Lincoln* v. *Burrage*, 177 Mass. 378, 381. And the stipulation for the annual payments, being expressed as a "condition" upon which the "conveyance is made," and not upon the grant of any specific interest, imports that the burden of such payments was intended to rest upon the entire subject of the grant and not merely upon the easement to use tracks on the premises of the grantor.

Whatever may be the limitations upon the creation of common law easements by covenants running with the land, as stated in *Norcross* v. *James*, 140 Mass. 188, upon which case the defendant strongly relies, and though it was said in that case that "equity will no more enforce every restriction that can be devised, than the common law will recognize as creating an easement every grant purporting to limit the use of land in favor of other land," page 192 (see *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 182–183), we think that the obligation created by the acceptance of the original deed by the grantee was not of such a nature as to preclude its being imposed as an equitable servitude upon the granted premises. It is clear that the easement to use the tracks of the grantor — which by the original deed was made appurtenant to the premises granted, whether or not also appurtenant to other premises of the grantee — runs with the estate of the grantee and that the restriction upon

such use, if not a limitation of the easement, at least continues in equity to attach to such estate in the hands of a person taking title to the granted premises with notice of such restriction. And it would be an extraordinary result if such a person did not take title to the granted premises subject also to the burden of paying part of the expense of maintaining these tracks in accordance with the provision therefor in the original deed, which was an integral part of the transaction by which the grantee acquired a trackage connection. Moreover, the existence of a condition subsequent upon breach of which the granted estate could be terminated would not be enough to prevent this result if the estate of the original grantor should be assigned. *Rice* v. *Boston & Worcester Railroad,* 12 Allen, 141, 143. *Hopkins* v. *Smith,* 162 Mass. 444, 447–448.

The burdens imposed and the benefits created by the original deed are closely, if not inseparably, connected. Compare *King* v. *Wight,* 155 Mass. 444, 447. The expense of maintaining the tracks on the premises of the grantor clearly relates to the beneficial enjoyment of the grantee's rights to use such tracks and, indeed, to the beneficial enjoyment of the granted premises and appurtenant rights which considered as a whole provide a trackage connection for the adjoining premises of the grantee. So also does payment of taxes on such tracks. Compare *Security System Co.* v. *S. S. Pierce Co.* 258 Mass. 4, 5. The nature of the interest required to be paid is not expressly stated in the deed. But the close connection of the requirement for such payment with requirements for other payments and its similarity to them in form imports that it is of the same general nature and, like those requirements, was intended for the support of the grantee's right to use such tracks. Furthermore, as the required payments relate to the remaining land of the grantor — particularly to the tracks, a right to the use of which was granted by the deed — and are for the support of the rights of the grantor therein, as well as those of the grantee, it is natural, in accordance with the intention of the parties as disclosed by the original deed, that the benefit should attach to the grantor's remaining

land. Performance of the obligation to make the annual payments would be useful and beneficial to the enjoyment of that land. See *Whitney* v. *Union Railway*, 11 Gray, 359, 367. In this respect the situation differs from that in *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 183. Consequently, the existence of an equitable servitude upon the granted premises is not to be denied on the ground that the grantor's right to the performance of the obligation to make the annual payments was held in gross and not annexed to land. See *Lincoln* v. *Burrage*, 177 Mass. 378, 379; *Orenberg* v. *Johnston*, 269 Mass. 312, 315–316; *Snow* v. *Van Dam*, 291 Mass. 477, 480–481.

The conclusion that the burden of making the annual payments would continue to attach to the granted premises in the hands of a person subsequently taking title thereto with notice of the provisions of the original deed, as an equitable servitude, is amply supported by the decision in *Whittenton Manuf. Co.* v. *Staples*, 164 Mass. 319, where it was held that the grant of a mill site with appurtenant rights in the water power created by a reservoir dam, and with a provision in the deed for payment by the grantee of a part of the damages from flowage of land by reason of such dam, imposed an equitable servitude upon the granted premises and the appurtenant water power rights in the hands of a subsequent owner who took title thereto with notice of the provision in the original deed for payment by the grantee of such part of the damages from flowage. There is no difference in principle between the obligation to make such payment and the obligation to make the payments required by the original deed in the present case.

The present defendant, having taken title to the premises through mesne conveyances from the grantee under the original deed, duly recorded, took such title with at least constructive notice of the provisions therein requiring annual payments. *Whitney* v. *Union Railway*, 11 Gray, 359, 366. *Peck* v. *Conway*, 119 Mass. 546, 549. *Powers* v. *Radding*, 225 Mass. 110, 115.

It follows that the obligation to make annual payments

as provided in the original deed is imposed as an equitable servitude on the premises and appurtenant rights granted by such deed to which the defendant has succeeded. This obligation, therefore, may be enforced in equity against the defendant to the extent that the performance of the duty of making the annual payments may be charged upon these premises and appurtenant rights. But it cannot, by reason of the equitable servitude, be enforced as a personal obligation of the defendant. *Whittenton Manuf. Co.* v. *Staples,* 164 Mass. 319, 328. See also *Kennedy* v. *Owen,* 136 Mass. 199, 203. And no promise by the defendant to make the stipulated payments personally can be implied from its use of the premises and appurtenant rights. The obligation contemplated by the parties to the original deed was not contingent upon such use. In this respect the case differs from the party wall cases, which are in some respect similar. See *Maine* v. *Cumston,* 98 Mass. 317; *Walker* v. *Stetson,* 162 Mass. 86, 89. Compare *Martin* v. *Drinan,* 128 Mass. 515, 516; *Kennedy* v. *Owen,* 136 Mass. 199. Moreover, even if, as in the usual case of a restrictive servitude, the defendant could be enjoined from using the premises in a manner inconsistent with the equitable servitude (*Whitney* v. *Union Railway,* 11 Gray, 359), that is, without making the stipulated payments, the amount of such payments cannot be recovered from the defendant personally as damages for use of the premises in such inconsistent manner. Compare *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91, 95. The obligation resting upon the land cannot be transformed into a personal obligation of the defendant in either of these ways.

Furthermore, the obligation to make the stipulated payments cannot be enforced as a personal obligation of the defendant by reason of the defendant's promise to its immediate grantor to make such payments to the plaintiff, implied from the acceptance by the defendant of a deed from such grantor providing for these payments. The general principle, long established in this jurisdiction, precluding an action by a third party beneficiary of a contract, forbids. And the case cannot be brought within any of

the exceptions to this principle.   *Mellen* v. *Whipple*, 1 Gray, 317.   *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139, 143–144.

The rights of the plaintiff and of the defendant with respect to the trackage connection provided for by the original deed are so interrelated that it is not possible on this record to determine the form which a decree should take to enable the plaintiff to enforce the obligation to make the stipulated payments as an equitable servitude upon the defendant's premises and appurtenant rights.

It follows that the decree must be reversed and the case remanded to the Superior Court for the entry of a decree embodying a declaration that an obligation to make the annual payments referred to in the original deed is imposed as a servitude upon the premises and appurtenant rights granted by such deed, enforceable in equity against the defendant as the owner of such premises and appurtenant rights to the extent of such premises and appurtenant rights, but not as a personal obligation of the defendant; and embodying such orders for consequential relief as, after hearing, may appear to be proper for the enforcement, in conformity with this opinion, of such obligation with respect to payments which have become due. See Rule 101 of the Superior Court (1932).

*Ordered accordingly.*