VICTORIA BANK & TRUST COMPANY, Appellant,

v.

Ennis M. COOLEY, Jr., et al., Appellees.

No. 15010.

Court of Civil Appeals of Texas.

Houston.

June 29, 1967.

Rehearing Denied Aug. 24, 1967.

Fly, Cory, Moeller & Stevenson, W. S. Fly, Victoria, for appellant.

Musslewhite & Musslewhite, Benton Musslewhite, Lufkin, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, Ennis M. Cooley, Jr., and the administrator of the Estate of Ennis M. Cooley, Sr., Deceased, against Atlantic Refining Company and Western Natural Gas Company and Victoria Bank & Trust Company, as exec-

utor of the Estate of M. E. Cooley, Deceased, and the Victoria Bank & Trust Company as administrator with will annexed of the Estate of F. C. Cooley, Deceased, for the recovery of certain royalties produced from certain lands situated in Victoria County, Texas. Atlantic Refining Company and Western Natural Gas Company paid into the registry of the court the amount of the royalties that were in dispute and were dismissed from the case with prejudice. The dispute between the Victoria Bank & Trust Company, appellant, and Ennis M. Cooley, Jr., et al, involves the construction of a quitclaim deed which was executed on March 19, 1955, by M. E. Cooley, a feme sole, and her sister, Frances C. Cooley, sometimes called F. C. Cooley, also a feme sole, in favor of Ennis M. Cooley, Sr. and Ennis M. Cooley, Jr., covering the grantors' ranch consisting of some 1311 acres of land in Victoria County, Texas. The case was tried before the court without a jury, and the judgment of the court was that appellees were entitled to recover the royalties in dispute.

Appellant's sole point of error is that the trial court erred in holding that the language of the deed in question vested the royalties in question in appellees during the period of time beginning November 27, 1959 and ending February 28, 1962, when F. C. Cooley died. The deed contains the following pertinent paragraphs:

"The Grantors herein specifically reserve that they, or the survivor of said Grantors, shall retain the full possession, use and benefit of all of the lands above described together with the rents, issues, profits, royalties from gas or oil thereon, or otherwise, for and during the natural life of the Grantors or the survivor of them.

"It is further specifically agreed that by this conveyance of title, that in the event the Grantors or either of them shall become incapacitated or physically unable to transact business in the normal and usual manner, then the title in fee simple hereby conveyed shall immediately vest in the Grantees and they shall have the immediate right to take over said lands hereinabove described to make improvements and to clear and to cultivate said lands and, if necessary, to use the rents, issues and profits from the cultivation of said lands or any other income therefrom for the use and benefit of the Grantors herein.

"This instrument is intended to and does hereby convey all of the right, title and interest of the Grantors in and to all cattle, livestock, farm equipment, feed, tools and other machinery and implements in, on or about the lands hereby conveyed, and also shall include all right, title and interest of the Grantors in and to all minerals, royalties, oil and gas, and all leases and conveyances presently outstanding in favor of the Grantors."

The evidence shows that on November 27, 1959 separate applications were filed for the appointment of a guardian for F. C. Cooley and for M. E. Cooley. M. E. Cooley died on January 31, 1960 without the court having taken any action in regard to her application. On March 14, 1960, however, the Victoria Bank & Trust Company was duly appointed guardian of the person and estate of F. C. Cooley, whom the County Court found to be an incompetent person, mentally incompetent to care for herself and to manage her property and financial affairs. At the time of her death M. E. Cooley was approximately 98 or 99 years of age, and F. C. Cooley at the time of her death was approximately 98 or 99 years of age. After Victoria Bank & Trust Company qualified as guardian, it operated the ranch from which the royalties were produced until the death of F. C. Cooley. During this period and, indeed, beginning with November, 1959, when the application for guardianship was filed, and until the death of F. C. Cooley, the royalties were withheld and impounded and later paid into the registry of the court, as hereinabove stated.

It is the contention of appellees that the deed in question gave them the right to all the royalties produced from the land in question as soon as the grantors, or either of them, became incapacitated or physically unable to transact business, which they assert occurred when the applications for the appointment of a guardian were filed in November, 1959. On the other hand, appellant contends that a proper interpretation of the paragraph of the deed with respect to either of the grantors becoming incapacitated or unable to transact business, in fact made the grantees trustees of the royalties for the two elderly ladies.

■ The evidence shows that Ennis M. Cooley, Sr. and Ennis M. Cooley, Jr., were the son and grandson, respectively, of H. M. Cooley, a cousin of M. E. Cooley and F. C. Cooley and their nearest relative, and that H. M. Cooley was a lawyer in Arkansas and the advisor of his elderly cousins. There is nothing in the record before us to show that H. M. Cooley drew up the deed or that the deed in question was drawn by the grantees. Hence the general rule of construction of deeds would apply, that is, if there is any doubt as to the meaning of the language of the deed, it should be resolved against the grantor and if the deed is susceptible of two constructions the one will be adopted that is most favorable to the grantee. 19 Tex.Jur.2d, page 398 et seq., Deeds, Sec. 110; Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930; Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; Bumpass v. Bond, 1938, 131 Tex. 266, 114 S.W.2d 1172; McGuire v. Bruce, 332 S.W.2d 110, Tex.Civ.App.1959, writ ref. The law is well settled that if a deed is unambiguous, the court should determine the construction from the four corners of the instrument itself, and in doing so should ascertain and give effect to the intention of the grantor as gathered from the entire instrument, in light of the surrounding circumstances, unless the intention is in conflict with some settled rule of law or is repugnant to the terms of the grant. Worley v. Empire Gas & Fuel

Co., 129 Tex. 532, 103 S.W.2d 368; Smith v. Smith, 305 S.W.2d 198, Tex.Civ.App., writ ref., n. r. e.

■ The deed in question is in the form of a quitclaim deed which, of course, conveyed whatever title the grantors had. Since at the time the deed was executed, and at the time the grantors became incapacitated, they owned the property in fee, the grantees acquired under the quitclaim deed a fee simple title. Richardson v. Levi, 67 Tex. 359, 3 S.W. 444; Garrett v. Christopher, 74 Tex. 453, 12 S.W. 67; Harrison Oil Co. v. Sherman, 66 S.W.2d 701, Tex.Civ.App.1933, writ ref.

■ In construing an instrument of conveyance, the first and paramount fact to be determined is the intention of the grantor gathered from the instrument as a whole. In the case of an unambiguous deed, all the provisions of the deed must be considered in the light of all other relevant provisions in order to ascertain the intention of the parties, and every part of the deed must be given effect where this can be done without violating any legal principle. Ulbricht v. Friedsam, 1959, 159 Tex. 607, 325 S.W.2d 669; Sisk v. Randon, 1934, 123 Tex. 326, 70 S.W.2d 689; Texas Pacific Coal & Oil Co. v. Masterson, 1960, 160 Tex. 548, 334 S.W.2d 436; 19 Tex. Jur.2d, page 402, et seq., Deeds, Sec. 112.

In the instant case the grantors in the deed, after reserving to themselves, or the survivor of them, the use and benefit of the lands together with the rents, profits, royalties from gas and oil, for and during the natural life of the grantors, or the survivor of them, specifically stipulated that in the event they or either of them "shall become incapacitated or physically unable to transact business in the normal and usual manner, then the title in fee simple hereby conveyed shall immediately vest in the grantees and they shall have the immediate right to take over said lands hereinabove described to make improvements and to clear and cultivate said lands,

and, if necessary, to use the rents, issues and profits from the cultivation of said lands or any other income therefrom for the use and benefit of the grantors herein."

It is our view that the evident intention of the grantors as expressed in the deed was that in the event either of them should become incapacitated the title and possession of the land in question would immediately vest in the grantees in fee simple. The grantors went further and stipulated not only that the title in fee would immediately vest in the grantees, but that the grantees would have the immediate right to take over said lands and make improvements thereon and clear and cultivate the land and, if necessary, to use the rents, issues and profits from the cultivation of the lands and any other income therefrom for the use and benefit of the grantors.

It seems clear to us that the grantors as a precautionary measure and for their own protection added the provision that if it became necessary for their use and benefit, the grantees would have the right to use the rents, profits and other income from said land for the grantors' use and benefit. This additional provision cannot be construed as a condition subsequent which if not performed would entitle the grantors to forfeit the land and recover the same. At the most it might be construed upon acceptance by the grantees of the deed as an implied covenant or an equitable charge or obligation imposed upon the grantees to use the income, profits and royalties from the land, if it became necessary to do so, for the support and maintenance and use and benefit of the grantors. It is appellees' contention that such additional provision is repugnant to the language vesting the fee simple title immediately in grantees upon either grantor becoming incapacitated, and hence such provision should be ignored and given no operative or legal effect whatever. They further assert, however, that if such provision is given any legal effect it must be construed favorably to the grantees since it constitutes a limitation upon their fee simple title which vested in them. Rittimann v. Rittimann, 323 S.W.2d 86, Tex.Civ.App., writ ref., n.r.e.; 19 Tex.Jur.2d, p. 399, Deeds, Sec. 110.

In giving consideration to all of the language of the deed, it is our view that such provision or limitation may be construed as an implied covenant or obligation placed upon the grantees to use the rents and issues from the land in question, and other income therefrom, for the use and benefit of the grantors if necessary. Allen v. Sharp, 233 S.W.2d 485, Tex.Civ.App.1950, writ ref. The deed does not provide for a forfeiture of any kind, and such provision cannot be construed as a condition subsequent as hereinabove stated. In this State even an agreement by the grantees to care for the grantors during their lives is held to be a covenant and not a condition, although the habendum clause in the deed is followed by the phrase "subject to the terms and conditions hereinafter provided." Sisk v. Randon, 1934, 123 Tex. 326, 70 S.W.2d 689; Cox v. Combs, 1908, 51 Tex. Civ.App. 346, 111 S.W. 1069; Hearne v. Bradshaw, 1958, 158 Tex. 453, 312 S.W.2d 948.

Even though such provision may not be held technically to be a covenant, it, in our opinion, imposed an obligation upon the grantees to use the income from the land in question for the use and benefit of the grantors if it became necessary to do so. Everett Factories & Terminal Corp. v. Oldetyme D. Corp., 300 Mass. 499, 15 N. E.2d 829, 118 A.L.R. 965. We are of the view that the grantors in the instant case intended to impose upon the grantees an obligation to use the income from the land in question for their use and benefit, but only in the event it became necessary to do so for their use and benefit.

At the time the grantors executed the deed in 1955, they undoubtedly knew that they had income from sources other than the lands in question, and they were proba-

bly aware of a large amount of cash which they had or were accumulating. The record shows that grantors had lands and property other than the land granted to appellees. At the time the Bank became guardian of the person and estate of F. C. Cooley in 1960, the estate had on deposit $40,157.07 to which were added receipts of $3,789.23 for the period from March 14, 1960 through May 15, 1961, making a total of $43,946.30. The estate also possessed bonds totalling more than $28,000.00. Mr. F. C. Urban, Jr., Vice President and Senior Trust Officer of appellant, testified by deposition that on March 15, 1961, the estate had a cash balance of $15,121.29 besides all of the bonds and personal property, after making all disbursements, including a considerable amount of attorney's fees for the initial work done in connection with the estate. When F. C. Cooley died and the guardianship was closed, the estate had cash left in the sum of $10,898.23, which included the proceeds from some of the bonds which had matured.

■ There was ample evidence in support of the implied finding of the trial court that both M. E. Cooley and F. C. Cooley became and were on and prior to November 27, 1959, incapacitated and physically unable to transact business in the normal and usual manner. There was also ample evidence in support of the court's implied finding that it was never necessary to use the rents, oil runs, profits or other income from the land in question for the use and benefit of the grantors. There is nothing in the language used in the deed to indicate that it was not the intention of the grantors that during the period of incapacity of either of them their own assets and income would be used for their use, maintenance and benefit rather than the income from the land conveyed by them in fee to appellees, and that the income from appellees' land was to be used only if it became necessary to use such income for the grantors' use and benefit. Furthermore, even if it can be said that there are any conflicting provisions in the deed or that

the language of the deed leaves any doubt as to the grantors' intention, the deed must be construed so as to convey the greatest estate that the terms of the instrument permit, and a construction that vests the estate in the grantees as speedily as the language of the deed will permit, is favored. Texas Pacific Coal & Oil Co. v. Masterson, 1960, 160 Tex. 548, 334 S.W.2d 436; Caples v. Ward, 1915, 107 Tex. 341, 179 S.W. 856; Rittimann v. Rittimann, supra.

We find nothing in the record showing any acts or conduct on the part of the grantees inconsistent with the immediate vesting of the fee simple title in them upon the grantors' becoming incapacitated. Ennis M. Cooley, Sr., lived on the land in question prior to the filing of the application for guardianship. Ennis M. Cooley, Jr., testified that his father moved on the ranch two or three years prior to the application for the appointment of the guardian, and took charge of the ranch, and looked after the ranch property. Furthermore, the evidence shows that Mr. Cooley was one of those who initiated the filing of the applications for the appointment of guardian. There is nothing in the record to indicate that Ennis Cooley, Sr., and Ennis Cooley, Jr., abandoned the right to possession of the property or the income therefrom.

There is ample evidence from which the court could find that the appellees took possession of the ranch, and its operation, and as owners in fee simple thereof exercised their right to possess and operate the ranch through a guardian who might be better qualified than they to run the ranch and look after the grantors. It is true that during the guardianship and the management of the ranch and the estate, the guardian sold some cattle and collected the proceeds from certain bonds which matured. There is nothing to show that the grantees objected to such action or that they were unwilling· for the cattle to be sold although the deed gave them title thereto. The testimony of the Vice President of appellant is that there were plenty

of liquid assets to take care of the needs of the elderly ladies, and that the income from the oil properties that were impounded and which are in dispute, were never needed for their support and maintenance. Manifestly, such evidence supports the implied finding of the court that it was not necessary to use the royalties from the land in question for the use and benefit of the grantors.

Judgment affirmed.