RAYMOND A. CLARK, trustee,[1] & others[2] *vs.* MEAD REALTY GROUP, INC.

No. 05-P-917.

Hampden. May 10, 2006. - October 2, 2006.

Present: MILLS, SMITH, & KATZMANN, JJ.

*Real Property,* Option, Equitable restriction, Deed. *Trust,* Constructive trust. *Contract,* Performance and breach. *Consumer Protection Act,* Unfair or deceptive act. *Practice, Civil,* Statute of limitations. *Deed,* Condition.

In an action seeking to establish the defendant's liability, as a successor in title to certain land, on the basis of an option agreement between the plaintiffs and the defendant's predecessor in interest pertaining to the land in question, the judge properly determined that while the option agreement created an equitable servitude, the defendant was not liable for obligations that arose before it took title to the land [495-497]; moreover, there was no basis for imposing a constructive trust on the land in favor of the plaintiffs [497].

There was no merit to a claim that the judge in a civil action made a clear error of fact requiring a new trial. [497]

In an action seeking to establish the defendant's liability, as a successor in title to certain land, on the basis of an option agreement between the plaintiffs and the defendant's predecessor in interest pertaining to the land in question, the judge did not err in granting summary judgment in favor of the defendant on a claim of breach of contract, because a covenant regarding real property does not create a contractual relationship with a successor in interest [497-498]; likewise, the judge did not err in granting summary judgment in favor of the defendant on a claim of unfair and deceptive acts in violation of G. L. c. 93A, where the claim was barred by the applicable statute of limitations [499].

This court declined to recognize, on the record of a civil action regarding an option agreement concerning a certain parcel of land, a theory of de facto exercise of an option. [498-499]

In a civil action involving, inter alia, a claim of trespass on a certain parcel of land, the trial judge correctly ordered a directed verdict in favor of the defendant on that count, where the plaintiffs were not in actual possession of the parcel in question. [499-500]

---

[1]Of the Arthur L. Clark Family Realty Trust.

[2]Arthur J. Clark, Richard J. Clark, and James F. Clark, as trustees of the Arthur L. Clark Family Realty Trust; Arthur L. Clark; and Rita M. Clark.

In a civil action, the judge did not abuse his discretion in excluding certain opinion testimony. [500]

CIVIL ACTION commenced in the Superior Court Department on May 2, 2000.

A motion for partial summary judgment was heard by *C. Brian McDonald*, J.; the case was tried before *Judd J. Carhart*, J., and entry of separate and final judgment was ordered by him.

*Harry L. Miles* for the plaintiffs.

*Martin C. Pentz* (*Karen L. Crocker* with him) for the defendant.

MILLS, J. The plaintiffs, Arthur L. and Rita M. Clark (Clarks) and the trustees of the Arthur L. Clark Family Realty Trust (trust), appeal from an adverse judgment of the Superior Court in their action against the Mead Realty Group, Inc. (Mead Realty), seeking to establish Mead Realty's liability as successor in title to Ampad Corporation (Ampad) on the basis of a 1984 option agreement between the Clarks and Ampad pertaining to certain real estate in Westfield. We affirm.

*Background.* The Clarks owned and divided unregistered land north of Egleston Road (now Servistar Industrial Way) in Westfield. On September 20, 1984, they contracted with Ampad relating to two of their parcels — A and B. (A sketch of the parcels in question appears as an Appendix to this opinion.) Parcel A was located north of Servistar Industrial Way and north of parcel B. On November 27, 1984, the Clarks conveyed parcel A to Ampad and entered into an option agreement (agreement) with Ampad with respect to parcel B. In the same deed, the Clarks conveyed to Ampad a narrow rectangular parcel of their land, B1, along the western side of parcel B, connecting parcel A to Servistar Industrial Way. The agreement gave Ampad the option to purchase parcel B from the Clarks at any time on or before January 10, 1990, and specified that in the event that Ampad did not exercise the option, (1) Ampad was to reconvey parcel B1 to the Clarks, subject to the rights of the public and Ampad to use the road and utilities Ampad planned to install on parcel B1, and (2) Ampad was to construct a road

and a water line across parcel B (the improvements), connecting Servistar Industrial Way with the road on parcel B1. The deed from the Clarks to Ampad explicitly made parcel B1 "SUBJECT TO the terms and conditions" of the agreement. A notice of option was recorded in the appropriate registry of deeds.

Between 1985 and 1988 Ampad constructed a road (Ampad Road) on parcel B1 extending from Servistar Industrial Way to parcel A. Ampad also constructed an eighty foot wide drainage swale on parcel B1 along the length of Ampad Road, located between Ampad Road and parcel B. In 1987, Mead Corporation acquired all of the stock of Ampad, and while Ampad continued corporate existence, it thereby became a wholly-owned subsidiary of Mead Corporation. On January 10, 1990, the agreement expired without Ampad having exercised its option to purchase parcel B. Soon thereafter, the plaintiffs[3] and Ampad disputed Ampad's obligations under the agreement.

The plaintiffs filed a complaint against Ampad in 1992, seeking damages for breach of contract, waste, and trespass, and specific performance of Ampad's obligations to reconvey parcel B1 and to construct the improvements on parcel B. The plaintiffs moved for attachment of Ampad's real estate in Hampden County and for an order temporarily and preliminarily enjoining Ampad from conveying parcel B1. The motions were allowed, but the plaintiffs permitted the restraining order to expire and did not request an extension of the attachment, which expired in July, 1998. In 1992, Mead Corporation divested itself of Ampad stock. Ampad conveyed a portion of parcel A and all of parcel B1 to Mead Realty on July 28, 1992; Mead Realty then granted Ampad easements over parcel B1 for ingress and egress, for use of a "roadway," and for drainage. In 1998, the Westfield city council voted to take a portion of parcel A by eminent domain, and in 1999 the city of Westfield took parcel B1 by eminent domain as well.

On September 3, 1999, a Superior Court judge dismissed those counts of the plaintiffs' complaint against Ampad seeking a declaration that Ampad had exercised the option, or that Am-

---

[3]It does not appear to be in dispute that sometime between the execution of the agreement and the option's expiration, the Clarks settled their right, title, and interest in parcel B and in the agreement upon the trust.

pad should be estopped from denying that it had exercised the
option. The plaintiffs have taken no action with respect to this
complaint since 2000, when Ampad filed a suggestion of
bankruptcy.

After initiation of the Ampad bankruptcy matter, the plaintiffs
filed the instant complaint on May 2, 2000. Seven of the
complaint's eight counts were against Mead Realty. Count 1
sought declaratory and injunctive relief, claiming that (1) the
agreement between the Clarks and Ampad binds Mead Realty
to convey parcel B1 to the plaintiffs; (2) the agreement binds
Mead Realty to construct the improvements on parcel B;
(3) Mead Realty must restore parcel B1 to its original condi-
tion, except for Ampad Road; and (4) Mead Realty has no right
to discharge water onto parcel B1. Count 2 alleged breach of
contract, by failure to reconvey parcel B1 to the plaintiffs;
failure to construct the improvements on parcel B; and the
discharge of water onto parcel B1. Count 3 alleged trespass or
nuisance, by the discharge of water onto parcel B1. Count 4 al-
leged a de facto exercise of the option by Mead Realty, and
requested damages of $625,000. Count 5 requested a declaration
of constructive trust as against Mead Realty; compensation for
the value of parcel B1; assignment by Mead Realty of its claim
against the city of Westfield for takings damages; and an ac-
counting by Mead Realty of all financial benefits received by
means of title in parcel B1. Count 6 alleged unfair and decep-
tive acts or practices by Mead Realty, pursuant to G. L. c. 93A.
Count 7 alleged civil conspiracy between Mead Realty and the
city of Westfield. Count 8 sought damages from the city of
Westfield for the taking of parcel B1 by eminent domain.[4]

Mead Realty filed a motion for partial summary judgment,
which was allowed on June 19, 2003. Judgment was ordered for
Mead Realty on count 2 (breach of contract), count 4 (de facto
exercise of option), count 6 (c. 93A), and count 7 (civil
conspiracy).[5] The motion judge concluded, among other things,
that the terms of the agreement (through incorporation into the

---

[4]Count 8 was subsequently severed for separate trial after resolution of the
claims against Mead Realty.

[5]The plaintiffs raise no argument on appeal regarding the dismissal of the
civil conspiracy count, and we do not discuss it further.

deed from the Clarks to Ampad) did not create an express servitude because the agreement did not mention the parties' "heirs and assigns."

Following a jury trial of the three remaining counts against Mead Realty before a different judge, the trespass and nuisance claims (count 3) were ordered dismissed on Mead Realty's motion for directed verdict. The trial judge dismissed the jury for the remaining counts and ordered judgment for Mead Realty on count 1 (declaratory and injunctive relief) and count 5 (constructive trust) on December 11, 2003. The trial judge determined that the option agreement did create an equitable servitude, but that Mead Realty was not liable for obligations that arose before Mead Realty took title to the land.

The plaintiffs filed a "motion to amend findings of fact, rulings of law and order for judgment, and motion for new trial," which was denied on May 14, 2004. On June 30, 2004, a separate and final judgment entered for Mead Realty on counts 1 through 7 of the plaintiffs' complaint. The plaintiffs appeal from that judgment.[6]

*Discussion.* A. *The equitable servitude.* The trial judge ruled that the Clarks' deed to Ampad burdened parcel B1 with a servitude because the deed contained language making parcel B1 "subject to" the agreement. See Restatement (Third) of Property (Servitudes) § 2.2 comment d (2000). He observed that because the deed and agreement "failed to define the duration of the parties' obligations, such as by including language binding heirs and assigns," resort must be had to the default rules of the Restatement of Property. See *id.* at § 4.2. The trial judge then determined that Mead Realty was not liable for the servitude burden because of the default rule that successors in interest are liable only for obligations that accrue during the time they hold title. See *id.* at § 4.4(1). He found that the obligations to reconvey parcel B1 and to make improvements on parcel B accrued in 1990 when the option expired, over two years before Mead Realty took title to parcel B1.

The plaintiffs argue that the judge erred by applying a default

---

[6]The city of Westfield is not a party to this appeal.

rule, and assert that proper consideration of the parties' intentions at the time the option agreement was executed would have yielded a different conclusion: that the Clarks and Ampad intended to bind Ampad's successors in title. As authority for the proposition that the intention of the parties controls the nature and duration of a servitude, the plaintiffs cite *Perodeau* v. *O'Connor*, 336 Mass. 472, 474 (1957), and *Cheever* v. *Graves*, 32 Mass. App. Ct. 601, 607 (1992). While the general principle is correct, see Restatement (Third) of Property (Servitudes) § 4.1 (2000), those cases, involving easements by implication, shed little light on the circumstances of this case.

We agree with the trial judge's conclusion that the words "subject to" in the deed to Ampad sufficed to create an equitable servitude. See *Whitney* v. *Union Ry. Co.*, 11 Gray 359 (1858); *Kennedy* v. *Owen*, 136 Mass. 199, 203 (1884); *Whittenton Mfg. Co.* v. *Staples*, 164 Mass. 319, 328 (1895); *Childs* v. *Boston & Maine R.R.*, 213 Mass. 91, 94 (1912); *Everett Factories & Terminal Corp.* v. *Oldetyme Distillers Corp.*, 300 Mass. 499, 504 (1938).

The outstanding question is whether Mead Realty is liable for an obligation that accrued while Ampad held title to parcel B1 and before Mead Realty took title. The cases cited by the plaintiffs are silent on this question. See, e.g., *Everett Factories & Terminal Corp.* v. *Oldetyme Distillers Corp.*, 300 Mass. at 504. They contend that the answer is to be found in evidence of the parties' intention that Ampad's successor be liable for Ampad's failure to exercise the option and perform the obligations (reconveyance of parcel B1 and construction of the improvements on parcel B) as set out in the agreement. However, upon our reading of the agreement and examination of the record, that is not clear — the intention is ambiguous.

Mead Realty asserts that the judge was therefore correct in relying upon the Restatement of Property to conclude that a "successor to a servitude burden that runs with an interest in property incurs liability on account of the servitude burden only for obligations that accrue during the time the . . . successor holds the burdened property interest," Restatement (Third) of Property (Servitudes) § 4.4(1) (2000), and that Ampad's obligations accrued when the option expired, two years before Mead

Realty acquired parcel B1. We agree. The judge did not err in ruling that Mead Realty cannot be liable for obligations that accrued before it took title to parcel B1. *Ibid.* Compare *Bailey* v. *Meade*, 250 Mass. 46, 49 (1924) (a covenant, once breached, ceases to run with the land).

B. *The constructive trust.* The plaintiffs argue that a constructive trust should be imposed because Mead Realty took title to parcel B1 with actual or constructive knowledge of the agreement and thus knew that the parcel should have been reconveyed to the plaintiffs. That argument is unavailing. Traditionally, our courts have employed a constructive trust "in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information." *Barry* v. *Covich*, 332 Mass. 338, 342 (1955). The plaintiffs have not alleged any fraud, violation of a fiduciary duty, or exploitation of confidential information on the part of Mead Realty. Nor does the record disclose any basis to conclude that Mead Realty was unjustly enriched from its transaction with Ampad. See *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 363 (1987) (constructive trust imposed to avoid unjust enrichment).

C. *Motion for new trial.* We have examined the plaintiffs' contentions based upon G. L. c. 183, § 15; G. L. c. 183, § 17; and G. L. c. 184, § 10, and find no argument or authority persuasive as to the applicability of these statutes which, when simply read, do not apply to the claim that Mead Realty was required to fulfil the terms of the agreement.

The plaintiffs also incorporate into their brief their motion to amend findings of fact, arguing that the trial judge made a clear error of fact requiring a new trial. We are not persuaded. The plaintiffs' motion did not allege any particular erroneous finding of fact, and the judge did not err by declining to adopt their proposed additional findings of fact.

D. *Breach of contract.* The judge reasoned that Mead Realty could not be liable on the breach of contract count because (1) it

was not a party to the agreement and (2) the elements of corporate successor liability were not met. The plaintiffs argue that the motion judge erred in granting summary judgment on the count, asserting that the deed between the Clarks and Ampad established a covenant that ran with the land so that it constituted a contractual obligation binding Ampad's successors. See Hovey & Koenig, Legal Forms § 15.2 (4th ed. 1999); Eno & Hovey, Real Estate Law § 13.6 (4th ed. 2004).

These arguments are unavailing because a real covenant does not create a contractual relationship with a successor in interest. See *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89, 99 (1979) (breach of real covenant and breach of contract are alternative theories of liability). The rights and obligations flowing from the agreement between the Clarks and Ampad do not create a contract binding Mead Realty.

E. *De facto exercise of option.* The plaintiffs argue that Mead Realty may be charged in equity with the exercise of the option agreement executed by Ampad. Specifically, they assert that Ampad and Mead Realty exercised dominion and control over parcel B1 inconsistent with ownership or possession by the plaintiffs, and that Ampad and Mead Realty could acquire ownership only through exercise of the option; thus, a reasonable trier of fact could have found that Mead Realty exercised the option.

The plaintiffs argue that in allowing summary judgment on the de facto exercise count, the judge erred because he assumed that the claim lacked a contractual foundation. They contend that a contractual relationship between them and Mead Realty did exist, and that certain conduct by Mead Realty effected an exercise of the option. They concede that Massachusetts law does not explicitly recognize the theory of de facto exercise of an option agreement, but cite a New Jersey Superior Court decision as persuasive authority. See *Fry* v. *Doyle*, 151 N.J. Super. 115, 122 (Law Div. 1977), rev'd on other grounds, 167 N.J. Super. 486 (App. Div. 1979). As elements of de facto exercise, the appellants propose (1) the existence of an option; and (2) indicia of ownership and control over the property by the optionee.

We decline to recognize, on this record, a theory of de facto exercise of an option. Mead Realty was not a party to the agreement. Mead Realty's interest in parcel B1 is not in issue and cannot effect the exercise of the option, because the agreement was for the purchase of parcel B, not B1. Only evidence of Mead Realty's exercise of dominion and control over parcel B could prove exercise of the option under the de facto theory.[7]

F. *Unfair and deceptive acts.* The plaintiffs argue that the motion judge erred in allowing summary judgment on the c. 93A count because a reasonable trier of fact could have found that Mead Realty accepted its deed from Ampad to secure the benefit of owning parcel B1 for itself without fulfillment of the terms and conditions of the agreement, which ran with the land.

The plaintiffs also contend that the claim is not barred by the statute of limitations because (1) the rights implicated were established by deed, for which the applicable statute of limitations is twenty years under G. L. c. 260, § 1; and (2) the wrong is ongoing, continuing every day that Mead Realty does not build the improvements on parcel B and reconvey parcel B1 to the plaintiffs.

We hold that the motion judge was correct in ruling that the claim is time-barred, as it was filed more than four years after the alleged wrong under c. 93A. See G. L. c. 260, § 5A. Moreover, that the plaintiffs claim to "have suffered ongoing injuries following the actions . . . complained [of] . . . does not transform the alleged wrongdoing into a continuing" one for statute of limitations purposes. *Kirley* v. *Kirley*, 25 Mass. App. Ct. 651, 655 (1988). We also note that even if this claim were not time-barred, it requires for its support Mead Realty's liability for an equitable obligation that does not exist.

G. *Trespass.* The plaintiffs argue that it was error for the trial judge to order a directed verdict on the trespass count on the basis that the plaintiffs were not in actual possession of parcel B1. Having reviewed the evidence of Mead Realty's actual pos-

---

[7]While we do not decide the point, we note that this count, and any other request for relief in the nature of a reconveyance of parcel B1, has probably become moot because of the eminent domain action by the city of Westfield, leaving the plaintiffs to their takings claim in count 8.

session that was presented to the jury, we conclude that the judge was correct in relying upon *Attorney Gen.* v. *Dime Sav. Bank of N.Y., FSB*, 413 Mass. 284, 288-289 (1992).[8] As in that case, the dispute here concerns a party without possession (the plaintiffs) against a party with actual possession (Mead Realty). See *id.* at 289 ("there can be no constructive possession by an owner of property actually possessed by another"). Furthermore, the record discloses no sufficient evidence of nuisance.

H. *Value of parcel B1.* The plaintiffs argue that the trial judge abused his discretion by excluding opinion testimony by plaintiff Raymond A. Clark (Raymond) about the value of parcel B1. The plaintiffs assert that as a trustee of the trust, Raymond had "adequate knowledge of his property." *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 173 (1997), quoting from *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. 666, 668 (1959).

We conclude that the judge did not err in excluding the testimony. See *Blais-Porter, Inc.* v. *Simboli*, 402 Mass. 269, 272 (1988) (rule allowing property owner to testify as to value is based not upon his holding legal title, but rather upon "his familiarity with the characteristics of the property, his knowledge or acquaintance with its uses, and his experience in dealing with it"), quoting from *Winthrop Prods. Corp.* v. *Elroth Co.*, 331 Mass. 83, 85 (1954). Raymond's lack of experience dealing with parcel B1 and other similar properties supports the judge's exercise of discretion to exclude the testimony.

I. *Conclusion.* There is no error shown, and the judgment is affirmed.

*So ordered.*

---

[8]Our holding in *Dilbert* v. *Hanover Ins. Co.*, 63 Mass. App. Ct. 327, 333-334 (2005), does not compel a different result. In that case, we concluded that a trespass or wrongful entry lies where a party with constructive possession opposed other parties without possession at the time of their entry.