## H. F. WORLEY ET AL. V. EMPIRE GAS & FUEL COMPANY.

No. 6796.   Decided March 24, 1937.
Rehearing overruled May 26, 1937.
(103 S. W., 2d Series, 368.)

*Vinson, Elkins, Weems & Francis, Charles I. Francis,* and *David T. Searls,* all of Houston, *Black & Graves,* of Austin, *Lawrence Treadwell,* of Corsicana, *Wynne & Wynne,* of Longview, and Neal E. McNeill, of Tulsa, Oklahoma, for appellants.

The instrument under consideration was simply a partition agreement between the children and did not have the effect of conveying the undivided one-half interest of T. J. Tuttle. Heirs of Watrous v. McKie, 54 Texas 65; Reynolds v. McMan Oil & Gas Co., (Com. App.) 11 S. W. (2d) 778; Hale v. Hollon, 90 Texas 427, 39 S. W. 287; Glasscock v. Hughes, 55 Texas 461.

*James W. Finley, Hayes McCoy,* and *H. J. Patterson,* of Bartlesville, Oklahoma, *Phillips, Trammel, Chizum, Estes, Ed-*

*wards & Orn,* of Fort Worth, *William Hodges,* of Texarkana, *Greenwood, Moody & Robertson,* of Austin, for appellees.

When construed from its four corners the instrument sufficiently reveals that the purpose and intent of the parties was that T. J. Tuttle conveyed his fee title in praesenti to an undivided one-half interest in the 330 acres to his children, subject to a right to collect rent, and that the right reserved was not as great as a life estate. Moore v. City of Waco, 85 Texas 206, 20 S. W. 61; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290; Kellett v. Kellett, 94 Texas 206, 59 S. W. 809; 14 Tex. Jur., p. 922, Sec. 144.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The substance of the certificate of the Court of Civil Appeals may be stated as follows:

T. J. Tuttle and wife, Nancy Jane Tuttle prior to 1915, were owners of approximately 330 acres of land in Gregg County, which was their community property. Mrs. Tuttle died in 1915, leaving her husband and ten children surviving her. Prior to the death of Mrs. Tuttle she and T. J. Tuttle had resided upon the 330 acres as their homestead, and after her death T. J. Tuttle and some of the children continued to reside thereon. On February 11, 1925, T. J. Tuttle and the ten children joined in the execution of the following instrument:
"The State of Texas,
"County of Gregg.
"Know all men by these presents, That this instrument of writing made between T. J. Tuttle; Julius Tuttle; Lee Tuttle; Jack Tuttle; Nobie Tuttle; T. W. Tuttle; Mrs. Exa Bander, joined by her husband, Joseph Bander; Mrs. Effie Jones, joined by her husband, Floyd Jones; Ruby Spurrier, joined by husband, John Spurrier; all of Gregg County, State of Texas; Mrs. Julia Newton, joined by her husband, Charlie Newton of Los Angeles County, State of California; and Mrs. Mattie Tuttle, a feme sole, of the County of Denver, State of Colorado, witnesseth:
"That whereas, we, the said T. J. Tuttle, Julius Tuttle, Lee Tuttle, Jack Tuttle, Nobie Tuttle, T. W. Tuttle, Mrs. Effiie Jones, Mrs. Exa Bander, Mrs. Ruby Spurrier, Mrs. Julia Newton, and Mrs. Mattie Tuttle, have and hold in common the lands hereinafter mentioned, and are desirous of making partition of the same to become in full force and effect upon the death of the said T. J. Tuttle, the surviving husband of Mrs. Nancy Jane

Tuttle, deceased, it being understood that the property hereinafter described is community property of the said T. J. Tuttle and Mrs. Nancy Jane Tuttle, and the parties hereto are the sole heirs at law who would take the estate of the said T. J. Tuttle and Nancy Jane Tuttle under the statutes of descent and distribution, and parties hereto are desirous of making partitions of the same, it is hereby covenanted, granted, concluded and agreed by and between said parties, and each of them covenants, grants, concludes, and agrees, for himself, themselves, his and their heirs and assigns, that a partition of said lands be made as follows, to-wit:

"First—The said Julius Tuttle shall have, hold, possess, and enjoy, in severalty by himself and to him and his heirs, and assigns for his separate estate for his part, share, interest and proportion of the said land and premises, all that tract of land situated in Gregg County, Texas, a part of the W. H. Castleberry H. R. Survey and described as follows:"

(Here follows the metes and bounds describing a tract of land "containing 40 acres, more or less.")

Then follows identical language setting aside to Mrs. Ruby Spurrier a tract of 55 acres, to Mrs. Exa Bander a tract of 40 acres, to Mrs. Effie Jones a tract of 48 acres, to Mrs. Julia Newton a tract of 40 acres, to Mrs. Mattie Tuttle a tract of 40 acres, to Nobie Tuttle a tract of 33 acres and to Lee Tuttle a tract of 33 acres. It will be noted that these eight tracts aggregate 329 acres, more or less, and constituted the entire 330-acre tract in question. The instrument then proceeds as follows:

"The said Jack Tuttle and T. W. Tuttle have heretofore received advancements which will equal the shares to which they would otherwise have been entitled and do not share in the lands and premises herein described. All parties hereto d grant, release and confirm unto the said Julius Tuttle, Mrs. Ruby Spurrier, Mrs. Exa Bander, Mrs. Effiie Jones, Mrs. Julia Newton, Mrs. Mattie Tuttle, Nobie Tuttle and Lee Tuttle, respectively, to his or her separate estate, and to his or her assigns, the respective tracts described aforesaid, to have and to hold said described land and premises, with all and singular the rights, hereditaments and appurtenances thereto in anywise belonging, unto the said Julius Tuttle, Mrs. Ruby Spurrier, Mrs. Exa Bander, Mrs. Effie Jones, Mrs. Julia Newton, Mrs. Mattie Tuttle, Nobie Tuttle, and Lee Tuttle, respectively, to his or her separate estate and to his or her heirs and assigns forever.

"Witnesseth our hands at Longview, Texas, this the 11th day of February, A. D. 1925."

This instrument was signed by all of the parties, duly acknowledged, and was placed of record. Afterwards some of those to whom the above mentioned tracts had been set aside executed oil and gas leases thereon and these leases passed to Empire Gas & Fuel Company. Thereafter T. J. Tuttle, father of the children mentioned, executed an oil and gas lease to H. F. Worley on the entire 330 acres, less a tract of 26.7 acres which is not here involved. Other parties acquired an interest in this lease from Worley.

The Empire Gas & Fuel Company, herein called plaintiff, filed this suit against Worley and the other holders under the lease executed by T. J. Tuttle and they will be designated as defendants. Plaintiff bases its suit upon the contention that the instrument above mentioned had the legal effect of divesting T. J. Tuttle of all his right, title and interest in the lands in question, except his homestead right, or a possessory right in the nature of a life estate, and that his lease to Worley vested in Worley no interest in the oil, gas and minerals in the land. The purpose of the suit was to cancel that lease as a cloud upon the title of the plaintiff, acquired by reason of the prior leases executed by some of the heirs covering some of the particular tracts set aside to them by the instrument in question.

In the trial court judgment was in favor of plaintiff. On the theory that the instrument in question was ambiguous, the court permitted the introduction of parol proof as to the intention of the parties, and particularly as to the intention of T. J. Tuttle. Elaborate findings of fact were made by the trial court, and if parol proof was admissible the findings of the court fully and completely justified the judgment which was entered. It is the contention of defendants, however, that parol proof was not admissible and the Court of Civil Appeals so held. That court at first reversed the judgment of the trial court and rendered judgment in favor of defendants. The court adopted the theory of defendants as to the construction of the instrument mentioned and held that the legal effect of same was as follows:

"(1) It presently bound all the parties to its terms; (2) It bound the two children, Jack Tuttle and T. W. Tuttle, to the admission, with respect to the land, that they had previously received their vested interest from the estate of their deceased mother, and their expectant interest in the estate of their father, T. J. Tuttle, and released the land from any further claims from them; (3) It bound the father, T. J. Tuttle, with respect to his 1/2 interest, to the changed relation, from that of cotenancy with all the children jointly to that of cotenancy with each separately of the eight distributees of the partition; (4) It

bound the eight children distributees to a severance of the relation of cotenancy between each other with respect to their vested interest inherited from their mother and of the interest which they expected to inherit from their father—it was a presently effective partition of their expectant interest as well as their vested interest in the land—presently operating as to their vested interest in the land; and, as to their expectant interest, to become operative and in full force and effect, when and if inherited, upon the death of their father."

Upon motion for rehearing the Court of Civil Appeals has certified to the Supreme Court two questions and has accompanied the certificate with copy of its opinion. The questions are as follows:

"Question 1. Is the instrument of date February 11, 1925, above set out to be construed as and given the legal effect of purely an agreement or deed of partition, or as one of partition and conveyance of the title to the' one-half interest of T. J. Tuttle to his eight children named?

"Question 2. Did this court err in holding, as done, that the instrument of date February 11, 1925, above set out, has the purpose and effect of purely an agreement or deed of partition, and not that of conveyance of the title to the one-half interest of T. J. Tuttle to the eight children named?"

1 We think the intention of the parties, and particularly of T. J. Tuttle, is manifest from a consideration of all parts of the instrument in question, and that intention must control, regardless of what may be the most appropriate technical term by which this instrument should be designated. We are not called upon to first classify the instrument as either a deed of conveyance or gift, or a deed of partition, or a combination of both, and give it effect according to the usual legal significance of an instrument in either of said classes. Our duty is to effectuate the intention of the parties as far as possible, and disregard technical designations, or rules of construction, except as may be absolutely necessary in ascertaining the intention.

Reading this instrument as a whole, without undue emphasis upon any part, and with due consideration to every part, two things stand out conspicuously and dominantly:

1. The heirs of Mrs. Tuttle and those who would become the heirs of T. J. Tuttle at his death by this instrument divided and set apart to eight of themselves all of the 330 acres of land, both as regards the physical property itself and the interest of T. J. Tuttle therein, exactly as if T. J. Tuttle were already dead and his interest had already vested in them as his heirs.

The eight of them took all that each of them was justly and equitably entitled to as heirs both of the mother and of the father. They each took such interest in the whole 330 acres, to have and to hold in severalty as his or her part, share and interest in the whole, and free from any right, title or interest of others as heirs of the father or mother. It is expressly declared that they are dividing the whole 330 acres on the basis that they were "the sole heirs at law who would take the estate of the said T. J. Tuttle and Nancy Jane Tuttle under the statutes of descent and distribution." The two children, Jack Tuttle and T. W. Tuttle, who had received advancements to the extent of the share to which they would be entitled by inheritance from both the father and mother, joined in the instrument by way of ratification of the division of the whole 330 acres and the distribution of the respective tracts to the other eight. Thus we have these children effecting a complete partition of all of this land, both as regards quantity and title, exactly as if the interest of the father were already vested in them, with declaration that they do "grant, release and confirm" unto each other respectively the tracts apportioned to each respectively and all their right, title and interest therein, acquired either from the mother or father.

2. We have T. J. Tuttle actively joining in and executing this instrument, acknowledging same as required by law, thus acquiescing in and giving his consent to this division and distribution of the property, both as regards the full acreage and his estate and interest therein; and have him fully consenting to and ratifying the disposition of all the land, and his interest therein, subject only to such legal limitation as may have been intended to be created by the language "to become in full force and effect upon the death of the said T. J. Tuttle."

We have T. J. Tuttle consenting to the setting aside of all of this land, both as to quantity and as to his interest therein, in this language: "It is hereby covenanted, granted, concluded and agreed by and between said parties, and each of them covenants, grants, concludes and agrees for himself, themselves, his and their heirs and assigns that a partition of said land be made as follows, to-wit." Then follows the distribution to the eight children of all of the property, with the recital that each shall have, hold, possess and enjoy in severalty, by himself (or herself) and to him (or her) and his (or her) heirs and assigns for his (or her) separate estate for his (or her) part, share, interest and proportion of the said land and premises.

We have T. J. Tuttle further consenting to, ratifying and confirming the division of all of said land, including his interest

therein, in this language: *"All parties hereto do grant, release and confirm unto the said (naming all of the eight distributees) respectively, to his or her separate estate, and to his or her assigns, the respective tracts described aforesaid, to have and to hold said described land and premises, with all and singular the rights, hereditaments and appurtenances thereto in anywise belonging unto the said (naming each of said distributees) respectively, to his or her separate estate and to his or her heirs and assigns forever."*

2  Preliminary to a discussion of the clause of the instrument above mentioned, it is proper to observe that this instrument does purport to be as to the children a partition agreement. As to T. J. Tuttle, however, it is undoubtedly more. It is our opinion that the giving of his consent in writing to a division of the whole estate and the vesting of title, including his interest, to each and every several part thereof in the eight children, respectively, as if they were the present owners of same, so clearly evidences an intention to make a conveyance or gift to the children of his interest as to legally accomplish that end, even in the absence of operative words of conveyance or grant. However, there is a specific grant by the said T. J. Tuttle in the paragraph quoted above.

There is no legal reason why this instrument as to T. J. Tuttle may not be treated as a deed of gift, even if in form and substance only a partition agreement as to the others. The case of Jones v. Jones, 150 Tenn. 554, 266 S. W. 110, by the Supreme Court of Tennessee, is in principle applicable. In that case the surviving wife of G. W. McKee and his heirs, including a Mrs. Ida Jones, entered into an agreement of settlement and division of lands owned by the said G. W. McKee and his wife at the date of his death. Although Mrs. Jones was entitled to an interest in said lands in fee as one of the heirs of G. W. McKee, nevertheless the partition agreement set aside to her a certain portion of the land, to have and to hold during her natural life, and then to her children and descendants. The same contention was made there as is made here, to-wit: That a deed of partition creates no new estate, or in any manner changes the estate of the participating parties from what it was before entering into the partition agreement. In other words, it was contended that Mrs. Jones' interest could not be diminished from a fee to a life estate with remainder to her children because her title "came to her by descent from her father, and did not depend on the deed executed by her co-tenants." Among other things the court said:

"If Mrs. Jones wished to hold merely a life estate in this property, with remainder to her children, we see no reason why this might not be done. It would be, in effect, a declaration of trust made by her for their benefit. The children's claim, in such a case, would derive its validity not merely from the agreement of the other parties interested in the estate, *but from the express written agreement signed by Mrs. Jones.*" (Emphasis ours.)

So here we say that if T. J. Tuttle wished to make a deed of gift to his children to be effective in praesenti as to interest, but with right of complete possession delayed until his death, we see no reason why he could not do so; and the result, as to the children, would not depend upon the agreement among themselves, but upon the express written agreement signed and executed by Tuttle himself.

**3** Having reached the conclusion that this instrument was intended to be a conveyance so far as T. J. Tuttle was concerned, it follows that the estate granted thereby was an estate in fee, unless it be that there is something in the instrument which expressly limits such estate, or requires a construction which would create a limitation. Article 1291, R. S. 1925. It is obvious, however, the only language in this instrument which can be construed to be a limitation upon the estate intended to be conveyed is the clause to the effect that the parties "are desirous of making partition of same (the whole tract of land) to become in full force and effect upon the death of the said T. J. Tuttle." In our opinion, this language must necessarily be construed as creating no limitation, but must be construed as merely retaining to T. J. Tuttle the right of possession and enjoyment during his natural life.

We are led to the foregoing conclusion, first, because we are of the opinion that this language was intended solely for the purpose of fully safeguarding T. J. Tuttle's constitutional right to occupy and enjoy his homestead during his life. Having consented to a complete partition of the land and his interest therein on the basis of full ownership in the eight children, it was appropriate to employ language of this import in order to negative the idea that he had voluntarily waived his homestead right by consenting to the partition of the land in which such right existed. We are further of the opinion that for this reason the right of possession and enjoyment reserved by him was measured by what was guaranteed to him by the Constitution, and was not intended to be what is usually termed a life estate.

Secondly, this construction of the language in question is absolutely necessary in order to give effect to that particular clause. A reservation in T. J. Tuttle of the right of alienation of his interest would have been wholly incompatible with the declared desire of the parties, including T. J. Tuttle, that the partition was "to become in full force and effect upon the death of the said T. J. Tuttle." T. J. Tuttle is now dead. If it be assumed that he had the right to execute the lease to Worley he in effect thereby sold to Worley a one-half interest in the oil, gas and minerals in the land covered by the lease. Upon his death the partition did not become in full force and effect as to the children whose particular tracts were covered by the lease, in this: Instead of owning said tracts "in severalty, by himself and to him and to his heirs and assigns," they owned them jointly with Worley and his assignees. Furthermore, as to the child or children who received the 26.7 acres not covered by the Worley lease, the partition was in full force and effect to that extent; and thus an inequitable distribution was brought about as between the children themselves. This inequitable situation might be of such consequence as to require a repartition of the entire 330 acres. Therefore, in order to give effect to this particular portion of the instrument we must conclude that it did not reserve to T. J. Tuttle any right which made it possible for him to prevent the division of the property becoming "in full force and effect" at the time of his death, in the exact manner and in all particulars as made by the children and agreed to by himself.

We may appropriately add that it is thus shown that instead of there being no grant, or a grant that was revocable, there is shown an unmistakable intent to make an irrevocable grant, otherwise the partition as made could not become in full force and effect upon the death of T. J. Tuttle.

There is a large class of cases involving instruments containing clauses that they are not to take effect until the death of the maker. The rule with reference to that class of instruments is aptly stated in the case of North v. North, 2 S. W. (2d) 481, in this language:

"In the absence of the valid reservation of a right to dispose of the property or to revoke the instrument, or language from which such reservation will be necessarily implied, the courts have with practical unanimity held such instruments deeds and effective to convey a present interest in the property described therein, notwithstanding the full title thereto and the right to the possession and enjoyment thereof are postponed to some future date."

The language used here, however, tends far less to indicate that the interest of T. J. Tuttle did not presently vest than the language of many of the cases from which the foregoing rule is deduced. In this instance, the language used does not suggest the idea that the title, interest or estate of T. J. Tuttle was not to vest until his death. It was only the "partition" which was not to become in full force and effect until his death. The use of the word "full" clearly indicates that the instrument did have force and effect immediately, but that its full force was suspended until after the death of T. J. Tuttle. We think this clearly indicates that although the title and interest of T. J. Tuttle became vested, full enjoyment and possession was not to be had by the children until his death.

But if we should be mistaken in thus construing the language in question, then certainly the rule announced above would be applicable, and the same result would follow. See Rawlings v. McRoberts, 95 Ky. 346, 25 S. W. 601; Emerson v. Pate, 165 S. W. 469; Pelt v. Dockery, 176 Ark. 418, 3 S. W. (2d) 62; Sutton v. Sutton, 141 Ark. 93, 216 S. W. 1052.

We therefore answer the first question as follows: The instrument of February 11, 1925, is not to be construed as and given the legal effect of purely an agreement or deed of partition, but is to be given the legal effect of one of partition and conveyance of the title to the one-half interest of T. J. Tuttle to his eight children named.

It follows that the second question must be answered as follows: That the court erred in holding as it did in the paragraph copied from its opinion, and in not holding that the instrument in question had the effect of a conveyance of the title to the one-half interest of T. J. Tuttle to the eight children named.

Opinion adopted by the Supreme Court March 24, 1937.

Rehearing overruled May 26, 1937.