Joseph **LEBOW**, Appellant,

v.

Stanford A. **WEINER**, Appellee.

No. 34.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 1, 1967.

Rehearing Denied Nov. 22, 1967.

Dow, Dow, Cogburn & Dow, and Perry J. Radoff, and Edmund L. Cogburn, Houston, for appellant.

McLeod, Alexander, Powel & Apffel, Benjamin R. Powel, Galveston, for appellee.

TUNKS, Chief Justice.

This is a plea of privilege case. The plaintiff in the court below, appellee here, filed suit in the District Court of Galveston County, Texas, for specific performance of a contract to sell land, in which contract he was the vendee of the land in question. Defendant in the court below, appellant here, filed a plea of privilege to be sued in Harris County, the County of his residence.

Plaintiff duly filed his controverting affidavit alleging a right to maintain the action in Galveston County under the provisions of Subdivision 5, Article 1995, Vernon's Ann.Tex.Civ.St.

A trial before the court resulted in a judgment overruling the plea of privilege. From the judgment defendant has perfected his appeal.

The appellant makes three basic attacks on the judgment of the court below. First, he says that there is no evidence or alternatively insufficient evidence to support the presumed finding by the trial court to the effect that the defendant either in person or by any duly authorized agent ever executed the contract which is the subject matter of the litigation. Secondly, he argues that the purported contract is unenforceable due to the inadequacy of the description of the property involved. Thirdly, he contends that the contract does not on its face provide for performance within Galveston County as required by Subdivision 5 of Article 1995 if appellee is to be entitled to maintain the suit in Galveston County over appellant's plea of privilege.

The trial was to the court without a jury.

The evidence showed that the appellant was the owner of a tract of land situated in Galveston County which he desired to

sell. He had authorized one Hyman Levin to seek a purchaser for the tract of property. The appellee, on the other hand, was seeking a tract of property onto which to move his business. He, the appellee, had employed an agent, Mrs. Evans, to seek a tract of land which he could buy. Levin maintained a sign on his tract of land advertising it for sale. Mrs. Evans, seeing the sign, reached Levin by telephone and made inquiry concerning the purchase of a part of the property. The two agents then arranged for a meeting with the owner, Joseph Lebow, for the purpose of discussing the transaction. On October 8, 1966, such meeting was conducted at a restaurant during which time the parties orally agreed as to a sale of the property herein involved. On the occasion of such meeting, Mrs. Evans, acting as agent for the buyer, offered to purchase a one-acre portion of the tract of property having a frontage of 150 feet for the sum of $20,000.00 per acre. That offer was orally accepted by Lebow.

After the luncheon, Mrs. Evans went to her office for the purpose of typing out the earnest money contract by which the sale was to be effected. She then went to the place of business of Lebow, where Levin was present, to present the earnest money contract for signature. On that occasion it was discovered that there was an ambiguity in the description of the property and the parties retired to an adjoining place of business where a typewriter was to be had and typed an instrument designated an addendum to the contract, which instrument was for the purpose of correcting the description.

The addition of the addendum required changes in the previously typed earnest money contract, which changes were made and each of which was initialed by all three of the parties present, that is, by Mrs. Evans, by Levin and by Joseph Lebow. All three of the parties signed the document referred to as an addendum. Levin and Evans signed the earnest money contract but Lebow did not actually place a formal signature on it. Levin's signature appears over the words "agent for seller." Lebow was present when Levin so placed his signature on the earnest money contract and did not raise any objections to his doing so.

The record is not entirely clear as to the chronology of the various signatures and initials placed upon the documents in question, but it is probable that the so-called addendum was signed before the earnest money contract itself was signed or initialed.

As mentioned above, the addition of the addendum necessitated some changes to be made on the face of the earnest money contract. For instance, "see attached agreement" was typed on by Mrs. Evans and each of the three parties present initialed such an amendment. During the course of the making of the changes and the placing of the initials on the earnest money contract, Mrs. Evans noticed that Lebow was making some additional changes on other copies of the contract. She objected to this, stating that the agreement in its final form had been reached and that Lebow had no authority to make any additional changes on the face of the earnest money contract. When Lebow indicated that he intended to make some further changes, Mrs. Evans protested, stating that the terms of the agreement had been reached, gathered up all copies of the contract and started to walk out. Then, according to the testimony of Mrs. Evans, as she reached the reception desk, Mr. Lebow called her back saying, "Mrs. Evans, there is no use in getting excited, we have made a deal."

Mrs. Evans then continued stapling the addendum to the remaining copies. When she had completed, she delivered copies to Mr. Lebow and his agent, Mr. Levin. She and Mr. Lebow then shook hands and the parties separated.

Mr. Levin testified that he did not know which of the two papers was signed first but that the two were treated together. He also testified after Mrs. Evans' had staged

her walkout and had been called back into the room by Mr. Lebow, some of the copies of the contract were signed or initialed by Lebow. Further, he testified that after the signing and initialing, Mr. Lebow said that he was satisfied with the deal and the copies of the documents were distributed.

The earnest money contract was on a printed form. It had a printed signature line for signature by seller with Joseph Lebow's name typed underneath that line. Joseph Lebow's signature was never placed on that line in any of the copies of the earnest money contract.

■ It does not make any real difference whether the so-called addendum to the contract on which the full signature of the appellant appears is considered as being the first or second page of the contract. Nor does it make any difference whether that part of the contract was signed before or after the changes were made on the printed earnest money contract, which changes were initialed by all of the parties involved. It is not essential to the validity of the contract that the signature of the parties should be at the end thereof. Missouri K & T R Co. v. Clark, 35 Tex.Civ.App. 189, 79 S.W. 827.

■ The real inquiry which a court must make in determining whether a party has signed a contract, is to determine whether he, or someone else at his direction, placed a marking thereon with the intention to give vitality to the instrument. In Newton v. Emerson, 66 Tex. 142, 18 S.W. 348, at p. 349, the court said: "A deed or other instrument may be said to be signed whenever the name of its maker is so written upon it as to evidence his intention to give authenticity to it. At common law the seal was the sign, and a sealing was regarded as a signing,—as the act evidencing the intention of the maker to give vitality to the instrument; so, under the laws of those states in which sealing has been dispensed with and subscription is not required, it has been very generally held that the writing of the name of the maker in the body of the instrument, in such connection as to evidence his intention to give effect, vitality, or authenticity to the entire writing as one completed instrument, is to be deemed a signing, within the meaning of the law."

■ In view of the fact that the trial below was a trial to the court and there are no findings of fact or conclusions of law, we must view the evidence in the light most favorable to the appellee and presume that the trial court made such findings, consistent with the evidence, as are required to support the judgment. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769; Hill v. McDaniel, Tex.Civ.App., 129 S.W.2d 321. We are of the opinion that the evidence outlined above is sufficient to sustain a presumed finding by the trial court to the effect that the appellee placed his signature on the document in question with the intent that both pages of it be a contract signed by him. We are of the further opinion that such a presumed finding is not against the overwhelming weight and preponderance of the evidence.

Appellant's fourth point of error is based upon his contention that the contract sued on was insufficient in law to constitute a contract in writing for the sale of land under Subdivision 5, Article 1995, due to the inadequacy of the property description.

■ It has been held, however, that an allegation of invalidity of the contract of the character here asserted by appellant is a defense to the merits of the claim under the contract and is not available to the defendant to use as a basis for sustaining his plea of privilege. Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; Scott v. Beaver, Tex.Civ.App., 405 S.W.2d 644.

■ The fact that parol testimony is required to explain an ambiguity does not keep an instrument from being a contract in writing within the meaning of Sub-

division 5. Farmers Seed & Gin Co. v. Brooks, 125 Tex. 234, 81 S.W.2d 675.

■ The Statute of Frauds is an affirmative defense not available on a plea of privilege hearing. Grayson Enterprises, Inc. v. Texas Key Broadcasters, Inc., 390 S.W.2d 346, writ dism'd.

■ Appellant's fifth point of error is as follows: "The trial court erred in overruling the plea of privilege filed by defendant herein, inasmuch as the purported earnest money contract does not specify that it is performable in Galveston County, Texas, and therefore it is insufficient to sustain venue under Subdivision 5 of Article 1995.

Subdivision 5 of Article 1995 is in the following language:

"Contract in writing—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

The contract which is the subject matter of this law suit contains the following language:

"WARRANTY DEED: SELLER agrees, when any title defects have been cured, to deliver a warranty deed at listing realtor's office, properly executed.–"

The undisputed evidence showed that Hyman Levin was the listing realtor and that he had one office, and one office only, which was located in Galveston, Galveston County, Texas.

Thus, while the contract in question did not expressly name a particular county, it did identify a definite place in Galveston County as the place for performance.

Obviously, the contract itself does not have to name the county in which performance is to be had, otherwise the words in the statute, "or a definite place therein" would be meaningless.

■ Where a contract names or identifies a definite place for performance, extraneous proof is proper to establish the county in which that definite place is located. Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825; Harrison v. Nueces Royalty Co., Tex.Civ.App., 163 S.W.2d 244, err. dism.; Butler, Williams & Jones v. Goodrich, 288 S.W.2d 887, err. dism.

Harrison v. Nueces Royalty Co. (supra) involved a suit filed in Nueces County on a promissory note which recited on its face that it was payable "at the office of the Nueces Royalty Company." There was no other language in the note indicating the place at which it was to be performed. The extraneous proof showed that the office of the Nueces Royalty Company was located in Nueces County. The defendant filed a plea of privilege and the plaintiff, in his controverting affidavit, relied upon Subdivision 5 of Article 1995. The judgment in the trial court in overruling the plea of privilege was affirmed. The court said 163 S.W.2d at p. 245, "We hold that the exception now requires that a definite place be stated in the written instrument, but that the identification of such definite place as being located within a particular county may be established by extraneous proof."

In Butler, Williams & Jones v. Goodrich, supra, the place of performance stated in the written contract was "at your residence below Navasota, Texas." The court held that to be an identification of a definite place within a particular county as contemplated by the provisions of Subdivision 5.

The judgment of the trial court is affirmed.