Joseph LEBOW, Appellant,

v.

Stanford A. WEINER, Appellee.

No. 7114.

Court of Civil Appeals of Texas, Beaumont.

March 12, 1970.

Rehearing Denied April 9, 1970.

Dow, Cogburn & Friedman, Houston, for appellant.

McLeod, Alexander, Powel & Apffel, Galveston, for appellee.

KEITH, Justice.

Weiner, as plaintiff, sued LeBow to enforce specific performance of an alleged contract to convey land in Galveston County. The jury verdict was favorable to Weiner and LeBow appeals. The parties will be designated by their respective surnames in this opinion. In a prior appeal involving venue [LeBow v. Weiner, 420 S.W.2d 755 (Houston 14th, Tex.Civ.App., 1967, no writ)], Judge Tunks held that the two-page instrument forming the basis of the present suit was a binding and enforceable contract between the parties. Rather than repeat all of the circumstances surrounding the making and delivery of the instrument, we refer to pages 757 and 758 of the reported opinion for an account thereof.

LeBow, in his first point, raises the defense of the Statute of Frauds. This defense, although urged in the venue appeal, was found "not available" to him in that posture of the case. (420 S.W.2d at p. 759)

■ The printed form used as the first page of the earnest money contract and the layman's language used in the addenda,[1] makes it necessary to separate the three elements which the parties had under consideration: the area sold, the consideration, and the description. We separate these elements:

1.  *Description:* " * * * out of Lot 534, Section 1, Trimble & Lindsey Survey, Galveston County, Texas, standing in the name of JOSEPH LEBOW; * * * to be specifically identified by survey * * * by licensed Engineer-Surveyor; * * * to be that part [of LeBow's land] adjacent to and West of a·tract of land owned by Joseph Swiff, * * *.

---

1.  Photocopies of the pertinent portions of these two pages making up the alleged contract sued upon herein are filed with this opinion.

\* \* \* \* \* \*

" \* \* \* the frontage to said land shall not be less than ONE HUNDRED FIFTY (150ft.) feet, along the Feeder Road, \* \* \*.

\* \* \* \* \* \*

" \* \* \* the 'West' boundary line shall be parallel with the 'East' Boundary line, \* \* \*."

2. *Area of land sold*: "One (1) acre [mentioned in the first line of the description]. \* \* \*

\* \* \* \* \* \*

" \* \* \* the frontage to said ~~one~~ ~~acre of~~[2] land shall not be less than \* \* \*

\* \* \* \* \* \*

" \* \* \* in the event that the the [sic] total square footage within the survey exceeds one (1) acre, or [is] less than one acre (1) then the total price will be pro rated;

\* \* \* "

3. *Price of the land*: "TOTAL PRICE $20,000.00 *per acre*[3] to be paid by PURCHASER as follows: \* \* \*.

\* \* \* \* \* \*

"This sale is based upon a price of $20,000.00 per acre, \* \* \* in the event that the the [sic] total square footage within the survey exceeds one (1) acre, or [is] less than one acre (1) then the total price will be pro rated; \* \* \* and the note representing balance [of] principal will be adjusted accordingly."

Without doing harm to the sense of the instrument, we recast the language to read as follows:

" \* \* \* SELLER agrees to sell, upon the terms and conditions herein, the following described real estate, \* \* \* in Galveston, Galveston County, Texas: One (1) acre of land out of Lot 534, Section 1, Trimble & Lindsey Survey, Galveston County, Texas, standing in the name of JOSEPH LEBOW; said acre of land to be specifically identified by survey \* \* \* by Licensed Engineer-Surveyor; said acre of land to be that part [of LeBow's land] adjacent to and West of a Tract of land owned by Joseph Swiff, \* \* \* the frontage to said land [contracted to be sold] shall not be less than ONE HUNDRED FIFTY (150 ft.) feet, along the Feeder Road \* \* \* [and] the 'West' boundary line shall be parallel with the 'East' Boundary line.

"[The] TOTAL price is $20,000.00 per acre; \* \* \* this sale [being] based upon a price of $20,000.00 per acre, \* \* \* [and] in the event that the the [sic] total square footage within the survey [to be made] exceeds one (1) acre, or [is] less than one acre (1) then the total price will be pro rated; \* \* \* and the note representing balance [of] principal will be adjusted accordingly." (Bracketed matter inserted.)

*Location of Land by Court*

The survey as made located the tract with a minimum of 150 feet frontage upon the feeder road, the east line was common to the Joseph Swiff tract with the west line parallel thereto, the land was situated in Lot 534, Section 1, Trimble & Lindsey Survey, Galveston County, Texas, standing

2. The words "one acre of" so appearing as typed in the original were stricken in ink by the parties and initialed on the original. "The deletions made by the parties \* \* \* may be considered by this court in order to arrive at the true meaning and intention of the parties." Houston

Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 664 (Tex.Sup., 1964).

3. The words "per acre" appear to have been written into the typed material in ink on the original.

in the name of Joseph LeBow. *But* the tract contained only nine-tenths (0.9) acre and the court prorated the cost upon acreage, $18,000.00 for the area within the description.

LeBow, invoking the Statute of Frauds (Article 3995, § 4, Vernon's Ann.Civ.St.), contends that the description contained in the two-page contract is insufficient in law and in fact. He points up his contention in this language found in his brief:

"In order to conjure from this [the description found in the contract] the tract shown on Plaintiff's Exhibit No. 3 (upon which the judgment is based) one must (a) completely disregard the language 'not less than' and arbitrarily assume that the frontage is to be *exactly* one hundred fifty (150) feet on the feeder, no more and no less, and (b) assume that 'adjacent to and West of' means that the tract conveyed is to have a common boundary with the Swiff tract all the way back to the Houston Lighting and Power Company property in the rear."

In Broaddus v. Grout, 152 Tex. 398, 258 S.W.2d 308, 309 (1953), the court expressed the rule in this language:

"The established test in determining the sufficiency, for compliance with the statute of conveyances and the statute of frauds, of the description of land in deeds and in contracts to convey land is thus stated in Wilson v. Fisher, 144 Tex. 53, 56–57, 188 S.W.2d 150, 152: 'the writing must furnish *within itself*, or by reference to some other existing writing, *the means or data* by which the particular land to be conveyed may be identified with reasonable certainty.' (Emphasis added.) * * * [citing cases]."

In essence, this is the "nucleus of description" theory enunciated by the Commission of Appeals in Continental Supply Co. v. Missouri, K. & T. Ry. Co., 268 S.W. 444, 446 (Tex.Com.App., 1925):

"Where the land is a part of the larger tract, the deed conveying the included tract or the judgment, the levy, or the probate proceedings offered in evidence, and to which the court may legally look, must contain a general description of the land embraced in the larger tract, in addition to the description of the inclosing tract—a starting point, a datum, referring to the included tract from which it may be traced by extrinsic facts to its location and be found. The general description may be only the name of the owner, a designated person's interest in the larger tract, or some such fact. But there must be a nucleus of description of the inclosed tract, around which extrinsic facts may be gathered from oral evidence such as locate the land. There must be something in the description to which oral evidence may be tied. Without such datum to begin with, proof of extrinsic facts is inadmissible. In the absence of such general though inaccurate description of the inclosed tract, to permit oral proof of location would be to pass the title to land by parol in violation of the statute."

Or, as the rule was put in Matney v. Odom, 147 Tex. 26, 210 S.W.2d 980, 982 (1948):

"The rule is well established that for a contract to convey land to be sufficient under the statute of frauds, art. 3995, R.C.S., 'the description must be so definite and certain upon the face of the instrument itself, or in some other writing referred to, that the land can be identified with reasonable certainty.' Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, 849; * * * [other citations omitted]."

But, as was said in Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247, 249 (1955):

"A reasonable certainty is all that the law requires. Conviction beyond all peradventure of doubt is unnecessary. Mansel v. Castles, 93 Tex. 414, 55 S.W. 559, 560. In that case the court supplied by construction an entire call missing

from the deed and held in part as follows:

" 'While, therefore, the proposition that the calls of the description in question correct themselves, and show the land intended to be described, is not capable of mathematical demonstration, yet that it is true is reasonably certain. Upon such certainty we act in all the highest concerns of life, and it is sufficient for the purposes of the law.' "

See also, Kansas University Endowment Ass'n v. King, 162 Tex. 599, 350 S.W.2d 11, 17 (1961).

LeBow has pointed out his primary objections to the description: the phrase "not less than 150 feet frontage" must be "exactly" that number of feet and adjacent to and West of" the Swiff Tract requires a common boundary between the two tracts. We do not have a case of "more or less" in a description of either acreage or the length of the call nor do we have an attempt to locate the easterly boundary at a place other than "adjacent to and West of" the Swiff Tract. The precise minimum number of frontage feet were allocated to the purchaser and the easterly line was not only "adjacent to and West of" the Swiff Tract, it was common thereto. The word "adjacent" is defined in The American Heritage Dictionary (1969) as "close to; next to; lying near; adjoining."[4] The line chosen by the surveyor fitted each of these requirements. The meaning of the word "adjacent" as construed in municipal annexation suits[5] is not necessarily controlling in this situation where we are attempting to ascertain the intent of the parties as expressed in their writing.

The only claimed ambiguity seized upon by LeBow's resourceful counsel is the requirement that the frontage of the tract involved must be not less than 150 feet upon the feeder road. This was a stated minimum, and that is what the court awarded to the purchaser. The minimum frontage question presented is not similar to the "more or less" question discussed by Chief Justice Calvert in Bickler v. Bickler, 403 S.W.2d 354, 360 (Tex.Sup., 1966) "used in conveyances to qualify statements of quantity and descriptive calls for distance." By the simple expedient of disregarding the words "not less than" which qualify the distance mentioned, we remove the claimed ambiguity.

It is obvious from a consideration of the instrument that the parties knew exactly what was to be conveyed by LeBow to Weiner. The only question in the minds of the parties was the precise acreage which would show up on a square footage measurement of the land *after* the survey. This contingency was taken care of adequately and completely through the device of proration of the cost and adjustment of the accompanying note.

The parties were willing to and "intended to risk a not unreasonable gain or loss in the estimated quantity." [Wooten v. State, 142 Tex. 238, 177 S.W.2d 56, 58 (1944), quoted in Bickler, supra.] Our case is analogous to that of Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 273, 110 A.L.R. 167 (1937), from which this quotation appearing in Bickler is taken:

"Estimate is used *in order that the intention of the parties shall not be defeated* by attempted precision, which at the time is not possible. They are words of safety and precaution, intended to cover some slight or unimportant inaccuracy, for an adjustment, if necessary, of *distance or quantity*." (Emphasis by Chief Justice Calvert in *Bickler*, supra.)

---

4. See in this connection Broun v. Texas § N.O.R. Co., 295 S.W. 670, 674 (Beaumont, Tex.Civ.App., 1927, error ref.), considering the word "adjacent" and Curlee & N.O.R. Co., 295 S.W. 670, 674 (Beau-Tex.Civ.App., 1922, no writ), considering the word "adjoining."

5. State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W. 2d 780, 786 (1957); City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325, 328 (Tex.Sup., 1969).

While in *Bickler*, the Chief Justice was speaking of calls for distance, this language is equally applicable to our case when dealing with quantity:

"But distance calls do not always call for a monument or adjoinder as a terminus. When they do not do so, qualifying words relieving exactness should be disregarded *unless the evidence establishes that the intention of the parties to the instrument would thereby be defeated.*" (Emphasis by the court.)

Ours is an even stronger case. We do not have to disregard anything to find the meaning and intent of the parties. It is obvious that they contracted for 150 feet of frontage along the feeder road and provided that price of the *surveyed acreage*, when made, would be adjusted in accordance with the actual quantity of land covered by the survey. The one-tenth shrinkage price was within the risk that the parties intended by the language they selected. Wooten v. State, supra.

Even if the presence of the words "not less than" appearing with reference to the frontage area of the land involved makes the contract ambiguous, thus requiring us to construe it to determine its true meaning, we have no real problem. The rules governing the construction of deeds have been considered in so many cases that we need to cite only a few.

In Worley v. Empire Gas & Fuel Co., 129 Tex. 532, 103 S.W.2d 368, 370 (1937), in speaking of the construction of a deed, the court said:

"Our duty is to effectuate the intention of the parties as far as possible, and disregard technical designations, or rules of construction, except as may be absolutely necessary in ascertaining the intention."

In Smith v. Allison, 157 Tex. 220, 301 S. W.2d 608, 614 (1957), the rule was expressed in these words:

"The ultimate purpose in construing a deed is to ascertain the intention of the grantor, and when this intention is ascertained, that construction which carries the intention into effect, when such intention is lawful, governs and controls."

The court in Garrett v. Dils Co., 157 Tex. 92, 299 S.W.2d 904, 906 (1957), spoke of a relaxation of the ancient rules, saying:

"In construing the deed we shall be guided by the well-established rule which we recently reaffirmed in Harris v. Windsor, Tex., [156 Tex. 324] 294 S.W. 2d 798, 799, 800, in this language:

" 'We have long since relaxed the strictness of the ancient rules for the construction of deeds, and have established the rule for the construction of deeds as for the construction of all contracts,— that the intention of the parties, when it can be ascertained from a consideration of all parts of the instrument, will be given effect when possible. That intention, when ascertained, prevails over arbitrary rules. Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442.' "

In construing the instrument, we will follow the rule enunciated in Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172, 1174 (1938):

"If there be doubt as to what the intention of the parties was, due to the language of the deed, such doubt should be resolved against the grantor."

See also: Victoria Bank & Trust Co. v. Cooley, 417 S.W.2d 814, 817 (Houston, Tex.Civ.App., 1967, error ref. n.r.e.), and cases therein cited.

We will, further, invoke the rule laid down in Waters v. Ellis, 158 Tex. 342, 312 S.W.2d 231, 234 (1958):

"It is to be presumed that the parties intended to effect a conveyance and a construction affirming the validity of a deed will be adopted in preference to one

which would nullify the instrument. * * * [citations omitted]"

In considering a somewhat analogous question, the Supreme Court of Washington in Paullus v. Fowler, 59 Wash.2d 204, 367 P.2d 130, 136 (1961), said:

"A seller dictates the terms upon which he will sell his property. If, in so doing, he uses a term which has a dual meaning, he cannot complain if the court requires him to accept the interpretation most favorable to the purchaser. * * * [citations omitted]"

Chief Justice Alexander, in Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380, 383 (1942), speaking of the office of a description in a deed said: "The sole purpose of the description of property, as contained in a deed of conveyance, is to identify the subject matter of the grant." [6] In Miller v. Hodges, 260 S.W. 168, 170 (Tex.Com. App., 1924), Judge German quoted from Ruling Case Law (now 23 Am.Jur.2d, Deeds, § 222, p. 265), adopting these words for our guidance:

"The sole purpose of a description of land as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, *by any reasonable rules of construction,* to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey." (Emphasis supplied.)

See also, Kuklies v. Reinert, 256 S.W.2d 435, 443 (Waco, Tex.Civ.App., 1953, error ref. n.r.e.).

Upon the trial of the cause, Weiner produced a surveyor, Hall, who was a graduate of Texas A. & M. College, a registered professional engineer, a licensed state land surveyor, and a registered public surveyor who had practiced his profession in Galveston for more than twenty years. The surveyor testified that he was given a copy of the contract sued upon and asked to make a survey of the property in accordance with the language of the contract. Having previously surveyed the adjoining Swiff tract mentioned in the contract, he went upon LeBow's land with his crew and made his survey from which the field notes involved in the judgment were taken.

He made the east line of the survey commence at the west line of the Swiff tract, took his call for 150 foot frontage "from the earnest money contract," the west line was parallel to the east line (and to the west line of the Swiff tract) and he went back to the north line of LeBow's property which was the south line of the Houston Light & Power Company property. The area surveyed was nine-tenths (0.9) acre. The plat was admitted into evidence.

█ Hall was familiar with the area in question and under his testimony had no trouble locating the specific tract which he surveyed after being furnished with a copy of the earnest money contract. This testimony was admissible under the rule enunciated in Gates v. Asher, supra (280 S.W. 2d at p. 248–249):

"If enough appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient. * * * [citations omitted]"

█ Upon cross-examination, Hall admitted that other areas *could be* carved out of the larger LeBow tract, but refused to admit that such other areas would be in conformity with sound surveying principles. Each of the areas so postulated by LeBow's counsel required a greater front footage on the feeder road than 150 feet. To secure precisely one acre, for instance, would require a front footage of approxi-

6. In Blackwell v. Scott, 223 S.W. 334, 338 (Galveston, Tex.Civ.App., 1920, error ref.), the court quoted from a West Virginia case, which contained this language:

"The office of description in a deed or other writing is not to identify the land, but to furnish means of identification."

mately 165 feet along the access road. The survey made by the witness was located upon the ground by one familiar with the locality and thus satisfied the requirement of certainty laid down in Gates v. Asher, supra. LeBow's first point raising the defense of the statute of frauds is overruled.

We next consider LeBow's fourth and eighth points raising the "no evidence" and the claimed insufficiency of the evidence to support the jury finding in answer to Special Issue No. 2.[7] The issue appears to be substantially the same as the inquiry used in Gates v. Asher, supra (280 S.W.2d at p. 249) and is supported by the testimony of the surveyor, Hall. The court, in admitting the contract into evidence and in submitting the case to the jury in the manner stated, acted properly: the court construed the language of the contract, a question of law, and submitted the issue of fact to the jury. The handling of this matter was proper under the rationale of Gates v. Asher, supra. It was not, as contended for by LeBow, a submission of a question of law to the jury, as was condemned in Walker v. Maynard, 31 S. W.2d 168, 170 (Austin, Tex.Civ.App., 1930, no writ), and relied upon by LeBow. Points four and eight are overruled.

Upon the trial of this cause, essentially the same evidence was presented by the parties as appears in the opinion filed in the venue appeal. The court there considered such evidence and held:

"We are of the opinion that the evidence outlined above is sufficient to sustain a presumed finding by the trial court to the effect that the appellee placed his signature on the document in question with the intent that both pages of it be a contract signed by him. We are of the further opinion that such a presumed finding is not against the overwhelming weight and preponderance of the evidence." (420 S.W.2d at 758)

The trial court in this instance submitted Special Issue No. 1, reading as follows:

"Do you find from a preponderance of the evidence that JOSEPH LEBOW placed his signature on Plaintiff's Exhibit No. 2 with the intent that both pages of it be a contract signed by him?"

To which the jury answered: "We do."

In answer to Special Issue No. 3, the jury found that Hyman Levin did not sign the instrument with the express authority of LeBow. However, the jury did find, in response to Special Issues Nos. 4 and 5, respectively, that Levin signed the contract with the implied and apparent authority of LeBow.

LeBow attacks Special Issues Nos. 1, 4, and 5 with "no evidence" and "insufficient evidence" points. We have reviewed the evidence under the appropriate standards [see In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951)] and each of such points is overruled. As to the complaint of the two-page instrument being a contract, the same is ruled by the doctrine of the law of the case as set out in Judge Tunk's prior opinion. For a discussion of this doctrine see: Franklin v. Cassaday, 62 Tex. 418, 420 (1884); Green v. Priddy, 112 Tex. 567, 250 S.W. 656, 659 (1923); 5B C.J.S. Appeal & Error § 1964d, p. 570; 5 Am.Jur.2d, Appeal & Error, § 748, p. 191; 4 Tex.Jur.2d, Appeal &

7. This Special Issue read: "Do you find from a preponderance of the evidence that the property description in Plaintiff's Exhibit No. 2 [the two-page contract] is sufficient to enable a person familiar with the locality to identify any tract or parcel of land with reasonable certainty to the exclusion of all other tracts or parcels of land?" The jury answered: "We do."

The explanatory instruction given was: "In connection with the foregoing special issue you are instructed that the property description is sufficient if the writing furnishes within itself, or by reference to some other writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty."

Error, § 1011, p. 701; Waddell v. Empire Drilling Co., 358 S.W.2d 221, 223 (Eastland, Tex.Civ.App., 1962, error ref. n.r.e.).

The findings of the jury in answer to Special Issues Nos. 4 and 5 are supported by the evidence of probative effect and LeBow's points challenging each of such findings, having been considered, are in all things overruled.

The judgment of the trial court being correct, is in all things affirmed.

PARKER, Chief Justice (concurring).

The contract became valid and enforceable when Weiner had the tract "specifically identified by survey by Licensed Engineer-Surveyor." This was done. Such survey honored all directions in the contract. All uncertainties were removed by the survey upon the ground. Dull v. Blum, 68 Tex. 299, 4 S.W. 489 (1887); Nye v. Moody, 70 Tex. 434, 8 S.W. 606 (1888); Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688 (1938).

STEPHENSON, Justice (dissenting).

I respectfully dissent. The language in the instrument which is the subject matter of this litigation, prepared by laymen, does not within itself or by reference to some other existing writing, furnish the means or the data by which the land can be identified with reasonable certainty. Broaddus v. Grout, supra. The parties just did not have a "meeting of the minds" as to the particular tract of land they intended to buy or sell.

The description in this earnest money contract contains two indefinite elements which make it impossible to arrive at a description of one particular tract of land. If the description had specified one acre of land with a frontage of not less than 150 feet, with the other elements in the description, we would have been furnished the data, or nucleus necessary to arrive at a particular tract of land. But, our description says one acre, "more or less," and

neither the parties nor the trial court construed it to mean "one acre." In fact, the surveyor, Hall, and the trial court found the tract of land to contain 0.9 of an acre. On the other hand if our description had called for precisely 150-foot frontage and one acre, more or less, the intention of the parties would have been clear and the information would have been furnished to reasonably describe the land intended to be covered. But this description called for "not less than" 150 feet and neither this court nor the trial court has the right to interpolate or eliminate terms of material legal consequence in order to uphold a contract which is void because of an uncertain legal description. Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699 (1951). The terms "150 feet" and "not less than" 150 feet do not have the same meaning and the majority opinion has no legal authority to so construe them.

This is not an action brought by one of the parties to reform this contract because of fraud or mutual mistake, and it is not contended the description is ambiguous and that parol evidence is admissible to show the intent of the parties. Also, this is not a case in which extrinsic evidence could be used to complete the description. As it is said in Gruss v. Cummins, 329 S.W.2d 496 (El Paso, Tex.Civ.App., 1959, error ref. n. r.e.):

"In other words, the function of parol evidence is to explain what is actually there, and not to supply that which is lacking."

As a matter of fact, if the majority opinion could be construed to mean that parol evidence was admissible on this case, all of the evidence in this record shows that the uncertainties mentioned above [one acre, "more or less" and "not less than" 150 feet] were not resolved in the oral negotiations of the parties, and that the written description merely recorded that which had been actually said by the parties. Apparently these parties did not realize until later, that they had not agreed upon a particular tract of land to be bought or sold.

If it is the intention of the concurring opinion to decide this case on the basis of equitable selection, then this is the first mention of that doctrine in this case. No contention was made by plaintiff in his pleadings or evidence in the trial court, and no contention is made in this court that recovery could be made on that basis. There is nothing in the instrument itself to indicate it was the intention of these parties to allow an unnamed surveyor to make a selection for them. I think the clear meaning of the words used in the contract "specifically identified" is that the surveyor should locate on the ground, the tract of land the parties had attempted to describe, using the information given in the contract. I find nothing in the instrument that a surveyor would be permitted to use his own discretion to select a tract of land for the parties. A careful reading of the statement of facts supports this conclusion, as there is a complete lack of evidence that any of the parties intended to endow a surveyor with such authority.

This case should be reversed and rendered.