Robert C. HUGLEY, Jr., Trustee,
Appellant,

v.

D. R. CALDWELL et al., Appellees.

No. 1709.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 30, 1977.

Rehearing Denied Jan. 4, 1978.

Charles E. Fitch, DeLange, Hudspeth, Pitman & Katz, Houston, for appellant.

Jon Mercer, Roger R. Wright, Jr., Woodward, Hall, McCrory, Henry & Primm, Houston, for appellees.

CIRE, Justice.

R. C. Hugley appeals from a judgment which denied him recovery of $10,000 allegedly due him pursuant to the terms of an earnest money contract. The trial court, after hearing the plaintiff's case, granted the defendants' motion for judgment that plaintiff take nothing.

On June 29, 1973, Hugley and D. R. Caldwell entered into an earnest money contract which provided for the sale of approximately 225 acres located in Brazoria County, Texas. The price per acre was set at $2,050.

The earnest money contract, a relatively lengthy document, contained, among other things, provisions for: (1) an option to purchase a thirty acre peach orchard; (2) the delivery, five days prior to the closing date, of any sales contracts between the vendor and third parties; (3) a $10,000 irrevocable letter of credit as earnest money to be placed in escrow with American Title Company which was to expire at the end of the business day on the closing date, August 31, 1973; and (4) a title policy to be furnished by seller on that date.

At closing, the vendee voiced several objections: (1) the title policy commitment contained a "rights of parties in possession" exclusion; (2) the tract survey indicated a road on the premises; (3) because of a variance, approximately six acres of the tract were unusable by the vendee; and (4) no sales contracts had been delivered to vendee five days prior to the closing date. The vendor stated these objections were invalid and demanded the $10,000 letter of credit before it expired. American Title Company, the escrow agent, agreed with the vendor that the vendee's objections were immaterial and delivered the letter of credit to the vendor, appellee Caldwell.

Appellant alleges error by the trial court in forty-five separate points. Since the trial court granted appellees' motion for judgment after hearing appellant's case, we must view and interpret the evidence in the light most favorable to appellant, disregarding all evidence and inferences favorable to appellees. *Hart v. Van Zandt*, 399 S.W.2d 791, 793 (Tex.Sup.1965); *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952).

[1] Appellant, in points of error eight through ten, complains of the trial court's conclusion that appellees fully performed all legal obligations under the earnest money contract. Appellant does not contend he was entitled to physical possession of the title policy on the date of closing, but that the title company was not in a position to issue the policy in conformity with the earnest money contract. The basis of appellant's complaint is that the title policy wrongfully contained a "right of parties in possession" exception. The earnest money contract called for an owner's title policy and a general warranty deed conveying the property free and clear of all encumbrances except those set out in Exhibit "C". The "rights of parties in possession" exception was not mentioned in that exhibit. Although the closing date was August 31, 1973, the title policy commitment containing the exception was issued on or about August 3, 1973. It is our opinion that by failing to raise any objection to the exception until the closing date, appellant, as a matter of law, is estopped from raising such

an objection at closing. The testimony of the title company witness, Ruth Winn, was clear, positive and uncontradicted. The "rights of parties in possession" exception was printed in the policy form as required by the company's underwriters. If a party desired that it be deleted, he would so inform the company prior to the closing date. The title company was willing and able to delete this exception subject only to an on-the-site inspection. Although appellant had approximately twenty-seven days to examine the title commitment and notify appellees of any objection, he elected to wait until the last moment to assert his objection. Appellant, by failing to object in a timely and reasonable manner, led appellees to believe that the "rights of parties in possession" exception was acceptable to appellant, and such reliance made it impossible to conduct an on-the-site inspection prior to the time that the letter of credit would expire. Estoppel is invoked to protect the justified expectations of the appellees. *Booty v. O'Connor,* 287 S.W. 282 (Tex. Civ.App.-Galveston 1926, writ ref'd).

In point of error number nine appellant alleges the appellee failed to perform its contractual obligations in that the land tendered by appellee differed from the land specified in the earnest money contract. A survey conducted after the execution of the agreement did indicate an isolated six acre strip of land which appellant claims could not be utilized by him for its intended purposes, but his complaint is invalid. The earnest money contract provided for 225 acres, more or less, and this six acre strip is clearly within the variance allowed by the words "more or less." These words are intended to relieve exactness. *Bickler v. Bickler,* 403 S.W.2d 354 (Tex.Sup.1966); *Lebow v. Weiner,* 454 S.W.2d 869 (Tex.Civ. App.-Beaumont 1970, writ ref'd n.r.e.). Additionally, at closing, appellee allowed appellant the option to purchase the land with or without the strip; the latter option included a $2,050 per acre reduction in the purchase price.

In point of error number ten appellant alleges that appellee Caldwell failed to provide appellant with copies of sales contracts five days prior to the closing as required by a provision in the earnest money contract. The sales contracts were purported to be agreements between appellee Caldwell and third party purchasers of small tracts of land on the 225 acre tract. There was no proof, however, that any sales contracts were ever consummated. There being no contracts, none could be provided. The provision requiring the contracts to be delivered to appellant was to become operative only if such contracts in fact existed.

All other points of error have been carefully considered and are overruled.

Affirmed.